JAMES AUSTIN, Appellant, *v.* JANE OAKES, Individually and as Executrix, etc., et al., Respondents, et al., Appellants.

A. died, leaving his widow, five children and two children of a deceased son surviving. By his will he gave the use of all his property to his wife for life, with remainder to said children and grandchildren "in such shares and proportions as she may, by her last will and testament, direct and appoint." In default of such appointment the estate to go to the children and to the grandchildren in six shares, the grandchildren to take one, with a substituted remainder to the issue of either of the beneficiaries dying before his or her share should vest. C., one of the grandchildren, died without issue before the death of the widow. In an action for the construction of the will, *held*, that while the wife had power to appoint one or more of the beneficiaries named to the exclusion of the others, and in such proportions as she saw fit, the power was limited to those beneficiaries, and she had no right to give any portion of the estate to others; and that, upon the death of C., she was limited to the survivors as the objects of her apportionment.

By a codicil the testator directed that, on the death of his wife, the share of the estate to go to C. should be held in trust for him during life, and, upon his death, the principal to go to his issue; if none, then the share to fall into the general estate, or as his wife should, by will, direct. *Held*, that the provision was confined to the contingency of the death of C. after the death of the widow, and, therefore, as he died before, the secondary power of appointment never became operative; and, so, did not affect the power of appointment contained in the will.

Before the death of C. the widow executed a will appointing the whole estate, which she described as that "bequeathed and devised to me in trust by my said husband" to the six permitted beneficiaries in unequal proportions,

giving one-sixteenth thereof to C. In case of his death, without issue, "the principal sum so held in trust" to go to four of the children and the surviving grandchild in five equal parts. After the death of C. the widow executed a codicil appointing his share to go to two persons other than the beneficiaries named in the will of A. *Held,* that, as she thus transgressed her authority, the codicil was void and inoperative for any purpose, and left the appointment of the will undisturbed; that by it the power given to her was completely and perfectly executed; that the devise over in case of the death of C. applied to a death during the lifetime of the testatrix, and that this construction was not affected by the fact that she referred in her will to the codicil of A. as the source of her authority to appoint; that the words "the principal sum so held in trust" referred to the share she had designated which she was holding in trust, not to a trust arising after her death.

The doctrine that an earlier provision of a will is revoked by a later one, or by a codicil repugnant thereto, operates only so far as it is necessary to give the later provision effect; and, so, does not apply where it is absolutely void.

Reported below, 48 Hun, 492.

(Argued December 2, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 17, 1887, which reversed a judgment entered upon a decision of the court on trial at Special Term, and directed judgment as therein specified.

This action was brought to obtain a judicial construction of the will of William Hutchinson, otherwise known as William Austin, and the will and codicil of Winifred Austin, his wife.

The said testator died in January, 1875, seized and possessed of a large estate, real and personal, leaving his widow and five children, four sons and a daughter, to wit, James Austin, the plaintiff herein, Charles, Robert and Richard Austin and Jane Oakes, defendants, and defendant's children, Charles Austin and Winifred Austin, the children of a deceased son, John W. Austin, him surviving. The provisions of his will, so far as material, are as follows:

"*First.* I give, bequeath and devise unto Mrs. Winifred Austin, who resides at my house, No. 248 West Twenty-third street, in the city of New York, where I reside, all my estate,

real and personal, upon trust, to hold the same during her life, and apply the rents and income thereof to her own use for that period, and, at her death, the said trust estate shall be divided amongst her four sons, James Austin, Robert Austin, Charles Austin, Richard Austin, her daughter Jane Oakes, wife of George Oakes, and the issue of her deceased son John W. Austin, in such shares and proportions as she may, by her last will and testament, direct and appoint; and in default of such direction and appointment the said estate shall go to her said five children now living and the issue of said deceased son in six equal shares; the issue of said deceased son to take one of said shares; and should either of said intended beneficiaries die before that one's intended share vests, then the issue of the one so dying shall take the portion intended for such deceased.

"*Second.* I hereby appoint the said Winifred Austin sole executrix of this my last will and testament.

"*Third.* I hereby authorize my said executrix to sell and convey any real estate I may own at my decease, and reinvest the proceeds in her own name as executrix in other real estate, in bonds and mortgages or United States government bonds to be held by her upon like trust."

"Whereas, I have named as sole executrix in my said last will, Mrs. Winifred Austin, I now wish to declare that she is, and has been since our cohabitation, my true and lawful wife, and her six children named in my said last will are our lawful children, the name of Austin therein retained having been so retained for reasons of our own.   *   *   *

"I direct that, on the death of my said wife, the share of my estate to go to our son James, and our grandson Charles, now known as James and Charles Austin, shall be held by my surviving executors in trust for them during their lives, and the interest thereof applied to their use, and at their respective deaths, the principal shall go to their issue, if any, if none, then the same shall fall into my general estate, or as my said wife shall by will direct."

The widow died in 1884; her will, which was executed in 1874, contained the following provisions:

"And whereas, my said husband, William Hutchinson, otherwise called William Austin, did, by his said last will and testament, give, bequeath and devise unto me all his estate, real and personal, upon trust, to hold the same during my life, and apply the rents, issues and profits thereof to my own use for that period, and, at my death, the said will directed that said trust estate should be divided among our four sons, James Austin, Robert Austin, Charles Austin, Richard Austin, our daughter Jane Oakes, wife of George Oakes, and the issue of our deceased son, John W. Austin, in such shares and proportions as I might, by my last will and testament, direct and appoint, and by the said codicil the said testator directed that the share of his estate which, at my death, was to go to our said son James Austin, and to our grandson Charles Austin, a son of our said deceased son John W. Austin, respectively, should be held by his surviving executors in trust for them and at their respective deaths the principal should go to their issue, if any; if none, the same should fall into his general estate, or as I should, by will, direct; and whereas our said deceased son John W. Austin left issue, only two children, who are now living, to wit, his said son Charles Austin and a daughter Winifred Austin, now Winifred Dennison, wife of Frederick Dennison.

" Now, I hereby declare, in pursuance of the power of direction and appointment to me by the said last will and testament given, that I do hereby direct and appoint that the said estate of said testator, real and personal, so given, bequeathed and devised to me in trust by my said husband at my death, shall be divided amongst our said five children and said two grandchildren of said deceased son John W. Austin as follows, to wit :

" One-half ($\frac{1}{2}$) part thereof shall go to our said daughter, Jane Oakes; one-eighth ($\frac{1}{8}$) part thereof to our said grand-daughter, Winifred Dennison; one-sixteenth ($\frac{1}{16}$) part thereof to our said grandson, Charles Austin; five-sixty-fourths ($\frac{5}{64}$) parts thereof to our said son, James Austin; five-sixty-fourths ($\frac{5}{64}$) parts thereof to our said son, Robert Austin ; five-sixty-fourths

($\frac{5}{64}$) parts thereof to our said son, Charles Austin, and five-sixty-fourths ($\frac{5}{64}$) parts to our said son, Richard Austin.

"And I do further direct and appoint in pursuance of the power in that behalf to me by said codicil given, that should our said son, James Austin, our said grandson, Charles Austin, die without issue, then the principal sum so held in trust for the one dying shall go, in the case of our son, James Austin, so dying, to our said other three sons now living and our said two grandchildren, the children of our said deceased son, John W. Austin, in four equal shares, the said two grandchildren to take one share, and in case of our said grandson, Charles Austin, so dying the same shall go to our said four sons now living, and our said grand-daughter, Winifred Dennison, in five equal shares; the shares of our said son, James Austin, and of our said grandson, Charles Austin, to fall into during their lives, and the interest thereof applied to their use, the same trust as that created for each by the said testator's said codicil."

The grandson Charles, died during the life of Mrs. Austin, and thereafter, in December, 1883, she executed a codicil which contained this provision:

"*Tenth.* Whereas, my late husband, William Hutchinson, otherwise William Austin, by his last will and testament, dated April 4, 1871, did devise and bequeath to me all his estate, real and personal, upon trust, to hold the same during my life, and to apply the rents, issues and profits thereof to my use for that period, and at my death his said will directed that said trust estate should be divided amongst our four sons and daughter, the said Jane Oakes, and the issue of our deceased son John W. Austin, in such shares and proportions as I might, by my last will and testament, direct and appoint, and in default of such direction and appointment, the said trust property was to go at my death in the manner in his said last will and testament provided.

"*Eleventh.* And whereas, in pursuance of the power so to me given to direct and appoint said trust estate, I did by my said last will and testament direct and appoint in what manner

the said trust estate should be divided at my death amongst our said four sons and daughter, and the issue of said deceased son.

"*Twelfth.* And whereas, of the said issue of our said deceased son John W. Austin, to wit, his daughter, Winifred Dennison, widow of Frederick Dennison, and his son, Charles Austin; the said Charles Austin has died since the execution of my said last will and testament. I do, therefore, further give, bequeath, direct and appoint, in pursuance of the said power so ' to me given, that the share of said trust estate appointed to him, the said Charles Austin, by my said last will and testament, shall go at my death to my said two grandsons, William A. Oakes and Frederick Oakes."

*Walter S. Logan* for appellant. The codicils are parts of the will to which they relate, and all the testamentary papers left by Mrs. Austin and admitted to probate must be read together as constituting, in their *en semble*, the will. (1 Redf. on Wills, 288; *Westcott* v. *Cady*, 5 Johns. Ch. 344; *Lynch* v. *Pendergast*, 67 Barb. 501.) Any valid execution of the attempted appointment given to Mrs. Austin in Mr. Hutchinson's will must be a complete execution of it. (*Routledge* v. *Dorrill*, 2 Ves., Jr., 357; *Gee* v. *Audley*, Id. 357; *Vanderzee* v. *Aclom*, 4 id. 771; Farwell on Powers, 229, 232; *Cowx* v. *Foster*, 1 Johns. & Hem. 30; *Wickersham* v. *Savage*, 58 Penn. St. 370; Perry on Trusts, §§ 254, 255.) Where a power has been executed in favor of a class as a class, some of whom are within and some without the limits of the power, the individuals of the class who may take have been allowed to take the whole to the exclusion of those who cannot take. (*Alexander* v. *Alexander*, 2 Ves., Sr., 644.) The doctrine of *Cy Pres* does not apply. (*Bascom* v. *Albertson*, 34 N. Y. 590; *Leonard* v. *Burr*, 18 id. 96; *Phelps* v. *Pond*, 23 id. 69; *Beekman* v. *Bonsor*, 23 id. 298; *Downing* v. *Marshall*, Id. 366; *Pitt* v. *Jackson*, 2 Brown's Ch. 51.) The suggestion that if the provision in the codicil to Mrs. Austin's·will giving a portion of the estate to William A. and Frederick Oakes was deemed invalid, then the codicil might be disregarded

altogether, is not tenable. (1 Redf. on Wills, 288; *Westcott* v. *Cady*, 5 Johns. Ch. 344; *Lynch* v. *Pendergast*, 67 Barb. 501; *Bascom* v. *Albertson*, 34 N. Y. 590.)

*George Bliss* for appellant. Mr. Hutchinson's will created a special power in trust which, under the Revised Statutes, was exclusive. Mrs. Austin, the donee of the power, could have appointed the whole estate to any one or more of the beneficiaries, excluding the others. (Sugden on Powers, chap. 7, § 5; *Kemp* v. *Kemp*, 5 Ves. 849; *Alexander* v. *Alexander*, 2 id. 640; *Cutting* v. *Cutting*, 86 N. Y. 530; *Hutton* v. *Benkard*, 92 id. 295, 305; *Cork* v. *Lowry*, 95 id. 103, 111; 1 R. S. 733, §§ 96–100, 123.) Any valid execution of the power of appointment given to Mrs. Austin in Mr. Hutchison's will must be a complete execution of it. (1 R. S. 733, § 97; *Varell* v. *Wendell*, 20 N. H. 431; *Cowx* v. *Foster*, 1 J. & Hem. 30, 35; *Wickersham* v. *Savage*, 58 Penn. St. 370; Perry on Trusts, § 254; *Routledge* v. *Dorrill*, 2 Ves. 357; *Gee* v. *Audley*, Id. 357; *Vanderzee* v. *Aclom*, 4 id. 771; Farwell on Powers, 232.) The scheme of Mr. Hutchinson's will covered all the emergencies which have arisen. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 219; *Beekman* v. *Bonsor*, 23 id. 298; *Cruikshank* v. *Home of the Friendless*, 113 id. 337; *Kennedy* v. *Kingstone*, 2 J. & W. 431; *Duke of Marlborough* v. *Godolphine*, 2 Vesey, Sr. 61, 78; *Wickersham* v. *Savage*, 58 Penn. St. 370; *Doe* v. *Nall*, 6 W., H. & G. 102; *Ackerman* v. *Gorton*, 67 N. Y. 63; *Embury* v. *Sheldon*, 68 id. 227; *Stevenson* v. *Lesley*, 70 id. 512; *Crooke* v. *Kings Co.*, 97 id. 421; *Wilson* v. *Pigott*, 2 Ves. 352; *Cutting* v. *Cutting*, 86 N. Y. 538; *Livingstone* v. *Murray*, 68 id. 491; *Maddison* v. *Andrews*, 1 Ves. Sr. 58; *Boyle* v. *Bishop of Petersborough*, 1 Ves. 299; *Holland* v. *Alcock*, 108 N. Y. 323; *In re Farncombe*, L. R., 9 Ch. Div. 656.) To give to Mr. Hutchinson's codicil the broad construction necessary to render the appointment made by Mrs. Austin's codicil valid is opposed to many authorities in this court upon the construction of wills. (*Wetmore* v. *Parker*, 52 N. Y. 462; *Tag-*

*gart* v. *Murray*, 53 id. 233 ; *Pierpont* v. *Patrick*, Id. 595 ; *Freeman* v. *Coit*, 96 id. 68 ; *Wager* v. *Wager*, Id. 172 ; *People* v. *McClave*, 99 id. 89.) Mrs. Austin's intention to prevent a lapse is clearly shown in her codicil, and she definitely points out the persons to take in substitution, namely, the Messrs. Oakes. This would, in any event, prevent a lapse of Charles' so-called share. (*Brown* v. *Hope*, L. R., 14 Eq. Div. 843 ; *Maddison* v. *Andrews*, 1 Ves. Sr. 57 ; Farwell on Powers, 190–198.) The argument that Mrs. Austin's will was a good exercise of the power she had at the time she executed her will, and that it was not to be invalidated by the death of Charles after its execution is fallacious. (*Carson* v. *Carson*, Phill. Eq. 57 ; Perry on Trusts, §§ 250, 258.)

*Henry L. Sprague* for respondents.

*Noah Davis* for William A. Oakes, respondent. By the provisions of the will Mrs. Austin was vested with a life estate in trust for her own use of all the estate, real and personal, of the testator ; and also with a special power in trust as defined by section 95 of our statute " of powers " under which, by the provisions of section 73 of that statute, its " creation, construction and execution " must be governed. (*Hutton* v. *Benkard*, 92 N. Y. 295, 304 ; *Cutting* v. *Cutting*, 86 id. 522 ; 1 R. S. chap 1, part 2, art. 3, § 73.) The death of Mrs. Austin brought her will and codicils simultaneously into operative effect. As an execution of the powers given by her husband's will and codicil, they are to be read together to determine their legal effect ; and they speak from her death, as though they were embodied in a single instrument. (Statute of Powers, § 123 ; 2 Washburn on Real Property, 722, § 1 ; 1 Tud. L. C. 306 ; 2 Sugd. on Powers [ed. 1856], 55 ; 1 Wash. 725 ; *Benne* v. *Perdeaux*, 10 East, 158 ; 4 Cruise Dig. 202 ; *Sinclair* v. *Field*, 8 Cow. 581.) No failure to execute properly or lawfully the power in favor of one beneficiary can operate to defeat the estates of the beneficiaries in whose favor it is lawfully and properly executed. (Farwell on Powers, 245 ; *Sadler* v. *Pratt*, 6 Sim. 632 ; *Bristow* v. *Ward*, 2 Vesey, 849 ;

*Wilson* v. *Piggott*, 2 id. 352 ; Sugden on Powers [7th ed.] 67 ; *Churchill* v. *Churchill*, L. R., 5 Eq. Div. 44.)   If the gifts under a power are of separate shares, even though some of the shares do violate the rule of perpetuities, yet those which do not are to be sustained.   (*Storrs* v. *Benbow*, 2 M. & K. 46 ; *Griffiths* v. *Gale*, 12 Sim. 355; *Wilkinson* v. *Rownal*, 30 Beav. 111.)

*Theodore W. Dwight* for executors, respondents.   The power given to Mrs. Austin in the will proper, as distinguished from the codicil, is, under the law of New York, an exclusive or selective power in trust, and not merely a distributive power; and, further, the execution by Mrs. Austin of the power conceded to her is valid.   (1 Sugden on Powers, 40, 42, § 4 ; *Malim* v. *Keighley*, 2 Ves. 533 ; *Maddison* v. *Andrews*, 1 id. 57 ; *Baker* v. *Barrett*, 2 Freeman, 199 ; *Alexander* v. *Alexander*, 2 Ves. 640; *Kemp* v. *Kemp*, 5 id. 849 ; *Menzey* v. *Walker*, Forrest, 72 ; *Wallen* v. *Tanner*, 5 Ves. 218 ; *Burleigh* v. *Pearson*, 1 id. 281 : Farwell on Powers, 294, 295 ; *Beardsley* v. *Hotchkiss*, 96 N. Y. 218, 219.)   The exercise of the power made by Mrs. Austin is certainly valid by force of the Revised Statutes of New York.   (*Cutting* v. *Cutting*, 86 N. Y. 522 ; *Hutton* v. *Benkard*, 92 id. 295 ; *Van Wort* v. *Benedict*, 1 Brad. 114; *Bolton* v. *De Peyster*, 25 Barb. 539.)   The power in the will proper, under the definitions of the Revised Statutes, is a special power in trust.   (1 R. S. 732, §§ 76, 78, subd. 1 ; Id. 734, § 95, subd. 1.)   The only limitation under this power is that Mrs. Austin must select the beneficiary or beneficiaries from the class described by the testator.   (*Beardsley* v. *Hotchkiss*, 96 N. Y. 218 ; 5 N. Y. Stat. at Large, 331, 332.)   The exercise of the power given in the codicil to Mr. Hutchinson's will, by his wife in the first codicil to her will, is valid.   (*Cunningham* v. *Moody*, 1 Ves. 174 ; *Ackerman* v. *Gorton*, 67 N. Y. 63 ; *Lawrence* v. *Hebbard*, 1 Bradf. 252 . *Goodall* v. *McLean*, 2 id. 306 ; *Prescott* v. *Prescott*, 7 Metc. 146 ;

3 Wash. on Real Prop. [4th ed.] 525; *Craven* v. *Brady*, L. R., 4 Eq. Cas. 209; 4 Ch. App. 296; *Rochford* v. *Hackman*, 9 Hare, 475; *Oke* v. *Heath*, 1 Ves. 135; *Vanderzee* v. *Aclom*, 4 id. 771; 1 Redf. on Wills, chap. 7, § 28; 1 Sugden on Powers, 123, 129, 461; *Cowen* v. *Brady*, L. R., 4 Ch. App. 299; *Montague* v. *Kater*, 8 Exch. 507; *Evans* v. *Sanders*, 1 Jur. [N. S.] 265; 2 Powell on Devises, 17th Rule, 9; *Covenhoven* v. *Shuler*, 2 Paige, 122; 3 Cruise's Dig. 169; *Jennings* v. *Conboy*, 73 N. Y. 230, 235, 236; *Freeborn* v. *Wagner*, 2 Abb. Ct. App. Dec. 182, 183, 236; *Embury* v. *Sheldon*, 68 N. Y. 227; *Stevenson* v. *Lesley*, 70 id. 512; *Crooke* v. *Co. of Kings*, 97 id. 421; Farwell on Powers, 7; 3 Jarman on Devises [5th Am. ed.] 706; *Driver* v. *Frank*, 3 M. & Sel. 37; *Smith* v. *Streatfield*, 1 Merivale, 358; 2 Wash. on Real Prop. 674, chap. 6, § 7.) The death of Charles Austin without issue before the testatrix, having caused, as far as he and his issue were concerned, a lapse of the provisions in his favor of a life estate in trust, as well as of that for the issue, assumed to be allotted to him, the share passed under the other clauses in Mrs. Austin's will or codicil, or if not under Mr. Hutchison's will, so that the entire estate was disposed of and there was no intestacy. The appointments as they stand are all valid. (3 R. S. [7th ed.] 2192, § 114; *Duke of Marlborough* v. *Godolphine*, 2 Ves. 61, 77; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45; 2 Wash on Real Prop. 658; *Oke* v. *Heath*, 1 Ves. 135; *Vanderzee* v. *Aclom*, 4 id. 771; *Burgess* v. *Mawbey*, 10 id. 319; *Earl of Salisbury* v. *Lamb*, Ambler, 385; 1 Sugden on Powers [7th ed.], 13; 2 Redfield on Wills, 13, § 8; Farwell on Powers, 134, 135, 190–198; *Easum* v. *Appleford*, 10 Sim. 274; 5 M. & C. 56, 60; *Falkner* v. *Butler*, Ambler, 514; *Vane* v. *Lord Dungannon*, 2 S. & L. 118; *Kennedy* v. *Kingston*, 2 Jac. & W. 431; *Lakin* v. *Lakin*, 34 Beav. 443; *Brown* v. *Hope*, L. R., 14 Eq. 343; *Maddison* v. *Andrews*, 1 Ves. Sr. 57; *Boyle* v. *Bishop of Petersborough*, 1 Ves. 299; *Paske* v. *Haselforth*, 33 Beav. 125; *Bulteel* v. *Plummer*, L. R., 6 Ch. App. 160.) Assuming that the gift to Frederick Oakes and William A. Oakes, in

Mrs. Austin's will, was in excess of her power, only the excess was void, and the provisions made prior to the excessive appointment remain unaltered. The part not validly appointed goes under other provisions of her will and codicil. (*Adams* v. *Adams*, 2 Cowp. 651; *Sadler* v. *Pratt*, 5 Sim. 632; *Harvey* v. *Stracey*, 1 Drew. 73; *In re Meredith*, L. R., 3 Ch. Div. 757; *In re Kerr*, L. R., 4 id. 600; *In re Farncombe*, L. R., 9 id. 652; *Falkner* v. *Butler*, Ambler, 514; *In re Hunt*, L. R., 31 Ch. Div. 308; *Bulteel* v. *Plummer*, L. R., 6 Ch. App. 160; *Duguid* v. *Fraser*, L. R., 31 Ch. Div. 449; *Bristow* v. *Warde*, 2 Ves. 336; *Wilson* v. *Piggott*, Id. 352; *Long* v. *Ovenden*, L. R., 16 Ch. Div. 691; *Rowley* v. *Rowley*, Kay, 242; *Young* v. *Lord Waterpark*, 13 Sim. 202; *Swinburne* v. *Pitt*, L. R., 27 Ch. Div. 696; *Bailey* v. *Lloyd*, 5 Russ. 342; *Churchill* v. *Churchill*, L. R., 5 Eq. Div. 44; Farwell on Powers, 232, 245; 2 Sugden on Powers, 67; *In re Chambers*, 11 Irish Eq. 518; *Malim* v. *Krighley*, 2 Ves. 533; *Kemp* v. *Kemp*, 5 id. 849; *Horwitz* v. *Norris*, 49 Penn. St. 213; *Topham* v. *Duke of Portland*, 1 De G., J. & S. 517; *Oke* v. *Heath*, 1 Ves. 135; *Lakin* v. *Lakin*, 34 Beav. 443; *Carter* v. *Taggart*, 16 Sim. 423; *In re Richardson*, L. R., 17 Irish Ch. 436.) The provisions of section 123 of the Revised Statutes of this state, upon powers, embrace this case, and if there be any irregularity in the execution, it is of no effect as to any estate or interest created in the will or codicil, so far as either of these may be embraced within the terms of the power. (4 Kent's Com. 346–347; 2 Sudg. on Powers, chap. 9; Farwell on Powers, chap. 6, 225, 258.) The arguments used against the appointments to the Messrs. Oakes in the codicil, are not in this case applicable. (2 Washburn on Real Property [4th ed.] 668; *Fuller* v. *Fuller*, Cro. Eliz. 422; *Goodright* v. *Cormick*, 1 Salk. 226.) But if we cannot fall back upon the appointment of Charles' share in Mrs. Austin's will proper, for any reason, then we say that it is governed by the provision in the codicil to Mr. Hutchinson's will to the effect that the share of Charles shall fall into his general estate.

There is no intestacy, but all the property passes by the will
and codicil of Mrs. Austin (Hutchinson). (*Mathis* v. *Ham-
mond*, 6 Rich. Eq. 121; 2 Washburn on Real Property, 700.)
But, if the codicil to Mr. Hutchinson's will is too vague
to be carried out, and it becomes necessary to fall back on
his will, then the appointment to Charles and his issue
has failed either by lapse or its being unauthorized; the fail-
ure leaves it simply an unappointed share, and it goes under
Mr. Hutchinson's will " on default of appointment." (Far-
well on Powers, 299, 300; 2 Sugden on Powers, 220;
3 R. S. 2213, § 23.) The judge, at Special Term, erred in
declaring the powers given to Mrs. Austin in her husband's
will and codicil to be unexecuted by her and the attempted
execution of them void. (R. S. of Powers, § 99; 3 R. S.
[7th ed.] 2287, § 52; 2 Redf. on Wills, chap. 13, 495, 496,
§ 8; Farwell on Powers, 226; 2 Sudg. on Powers, chap. 9,
55, § 9; 4 Kent's Com. 346; 3 R. S. [7th ed.] § 99; *Storrs*
v. *Benbow*, 2 M. & K. 46; *Griffith* v. *Pownall*, 13 Sim.
393; *Wilkinson* v. *Duncan*, 30 Beav. 111; Gray on Per-
petuities, § 537.) There is no defect in the exercise of the
power in the codicil to Mrs. Austin's will, growing out of an
erroneous recital in that instrument of the powers given her
by her husband. (*Campbell* v. *Leach*, Ambler, 740; *Blake* v.
*Marnell*, 2 Ball & B. 35; *Wade* v. *Paget*, 1 Brown C. C. 363;
1 Sugd. on Powers, 419; R. S. on Powers, § 124.)

*James J. Thomson* for Frederick Oakes, respondent.
If the disposition by Mrs. Austin's codicil of the share of
Charles Austin is declared void, it in no way affects the
appointments made by her under her will. (1 Sugd. on
Powers [7th ed.] 276; 2 id. chap. 9; Farwell on Powers,
chaps. 7, 8, 259; R. S. [7th ed.] 2193, §§ 123, 131; 4 Kent's
Com. 346, 347; 1 R. S. 732; *Hutton* v. *Bankard*, 92
N. Y. 295, 304; *Jennings* v. *Conroy*, 73 id. 233.)

FINCH, J. The primary question raised in this case is
whether the will of the testator gave to his wife a single power of
appointment only, or, in addition thereto, a second and broader

power, although limited in its operation to the shares intended
for the son James, and the grandson Charles, and to the con-
tingency of the death of either without issue during the life-
time of the widow.    Stated in a more convenient form, the
inquiry is whether the power of appointment recited in the
testator's codicil is a new and distinct and separate power, ade-
quate to sustain the appointment made, or not so adequate and
merely a reference to the one already given in the will itself.
Upon this question the trial court and the General Term have
differed with so much of sensible and pertinent reasoning as
to make a final determination not altogether easy.

The testator left his widow and four sons, and one daughter,
and the two children of a deceased son, John W., who were
the objects of his bounty, and for whose benefit he made care-
ful provision.    To his wife he gave the use of all his property
for her life, with remainder to her children, and the issue of
John, but " in such shares and proportions as she," the widow,
" may by her last will and testament direct and appoint," and
then further provided " that in default of such direction and
appointment the said estate shall go to her said five children
now living and the issue of said deceased son in six equal
shares ; the issue of said deceased son to take one of
said shares ; and should either of said intended beneficiaries
die before that one's intended share vests, then the issue of the
one so dying shall take the portion intended for such deceased."
One thing in this provision seems at first very obvious.    The
whole disposition of the remainder into six equal shares, with a
substituted remainder to the issue of any one dying before his
or her share should vest, appears to be a disposition which,
literally interpreted, relates only to the emergency of a failure
by the wife to appoint at all.    But closer examination makes
that construction inadmissible, and all parties appear to agree
that it is the testator's apportionment only which operates in
default of an appointment, and that the other provisions of
his will relate to, and restrict or enlarge the operation of the
power conferred upon his wife.

That power was one of apportionment.    The testator

decreed that his property should go, after the life estate of his wife had ended, to his six named devisees and their issue, and authorized her to dictate by her will the shares and proportions in which they should take. It is undoubtedly true that the power was selective, and the wife at liberty to appoint to one or more, excluding others, for the statute which abolished all previously existing powers and substituted a new system by which we must be guided, provided (§ 99), that "when the terms of the power import that the estate or fund is to be distributed between the persons so designated in such manner or proportions as the trustee of the power may think proper, the trustee may allot the whole to any one or more of such persons in exclusion of the other." The testator, therefore, presumably knew that his wife's apportionment might be unequal, and even that some could be excluded, although he evidently did not anticipate such actual exclusion by her; but in any event, whatever her apportionment might prove to be, he himself limited those shares to the named devisees or some or one of them, depending upon his wife's action or omission to act, with remainder over in case of the death of any one in the widow's lifetime to the issue of the one so dying. He thus intended a share for each, if his wife made no appointment; and a share for each, or for one or more of them if she did; but she had no power except to apportion the estate among the children; having no right to give anything to others, and authorized to give it to them only by the process of dictating their respective proportions. He gave her no power by the terms of his will, as distinguished from his codicil, to appoint to the issue of any in the emergency of the death of one or more during the widow's lifetime, leaving issue. He reserved that power to himself and exercised it. He provided for that possible event, and so the entire substance of his will covered four dispositions, and four only. They were, first, a life estate to his wife; second, remainder to his six children, counting the two children of John as one; third, an equal division of that remainder among the six, unless his wife should by will make the division in other

proportions which he authorized her to do ; and, fourth, if one should die before the widow, leaving issue, his share to such issue. Now, the event contemplated by the fourth disposition never occurred, and can never occur, for, of all the six, the grandson Charles alone died before Mrs. Austin, and he left no issue. We are, therefore, spared any inquiry into the meaning and scope of the fourth disposition, because the event never occurred and never can happen which would have made it operative.

But while the will failed to cover possible contingencies in respects which led to the codicil, it did reach the contingency of the death of Charles, without issue, prior to the decease of the widow, through the appointment which she was authorized to make. Under the authority conferred upon her she was empowered, after the death of Charles, childless, to divide the whole estate among the survivors of the named and permitted devisees. She could have omitted him and made precisely that disposition if he had lived. When he died childless she could not avoid such omission, and was limited to the survivors as objects of her apportionment.

But the testator made a codicil. By the terms of that he restricted the operation of his wife's power of appointment in one direction, and enlarged its operation in another, without in any respect changing its terms. That codicil reads thus : " I direct, on the death of my said wife, the share of my estate to go to our son James, and our grandson Charles, now known as James and Charles Austin, shall be held by my surviving executors, in trust for them during their lives, and the interest thereof applied to their use, and at their respective deaths the principal shall go to their issue, if any ; if none, then the same shall fall into my general estate, or as my said wife shall by will direct." This last expression is claimed by the respondents to be a new, distinct and secondary power which Mrs. Austin was at liberty to exercise, and which was without restriction so far as it applied. But whatever it was, in its scope and range, it was confined to the contingency of the death of James or Charles, *after* the death of the widow, and

has no application to the death of either *before* Mrs. Austin, which was the actual event. For the codicil pre-supposes the survival of James and Charles; it speaks of a situation at the death of the widow; it creates a trust for them beginning at that death, and at no moment earlier; it limits them to the income of such trust fund, and disposes of the principal at their deaths. To meet the conditions of the codicil and make its dispositions operative it was requisite that, at Mrs. Austin's death, there should be a share to go to James and Charles, which was capable of being held in trust for them; and it was that share so vested in each that trustees were to hold, and that was to go to issue, or if none, to fall into the general estate or as the widow shall by will direct.

We need not linger over the meaning of this alternative disposition. It is enough, for all the purposes of the case, that the secondary power given by the codicil to Mrs. Austin never became operative as it respected any share of Charles, because he died before Mrs. Austin without issue, and the only provision adequate to and provided for that emergency by the will or codicil of the testator slept in the authority conferred upon the widow to appoint the whole estate to those of the permitted devisees who were living at her own decease. No other provision was needed. The general intention of the testator to keep his property in the ownership of his children was perfectly accomplished, because, upon the death of Charles without issue in the lifetime of his grandmother, she was armed with power to dispose of what would have been his share if he had lived among the surviving objects of the power. The secondary power, appendant and appurtenant to an estate of Charles, vesting in possession after the death of Mrs. Austin, must be dismissed from the controversy as having no bearing upon the contingency which actually arose.

The will and codicil of the testator leaves us, therefore, with only the primary power of appointment applicable to the situation produced by the death of Charles without issue in the lifetime of the widow. And that opens the final and

ultimate question whether Mrs. Austin, by her will, did effectually exercise the primary authority conferred, or whether she so failed as to make her action invalid and leave the property to pass under the provisions of the testator's will which operated in that emergency. That question has been argued elaborately and with an industrious citation of authorities, and adds a new and grave interest to the duty which remains. Mrs. Austin executed first a will and later a codicil which, together, were admitted to probate and constitute her last will and testament. By the earlier instrument she formally executed what she intended should become, at her death, the "direction and appointment" authorized by her husband's will. She recites the authority conferred accurately and in detail, declares her intention, and then appoints the whole estate to the six permitted devisees, but in unequal proportions, giving one-half of the whole to her daughter, Jane Oakes, and one-sixteenth to the grandson Charles, leaving smaller proportions to the others; and then, mindful of the emergency to which her husband's codicil called her attention, she appointed that if James should die without issue his share should go to the three sons living and the two grandchildren, the latter taking one of the four parts; and if Charles should die without issue his share should go to the four sons living and to the grand-daughter Winifred in five equal shares, and then created, as part of her disposition, the same trust as described in her husband's codicil. At this point of time and at this stage of the widow's action the authorized appointment was completely and perfectly executed, and in all respects within the limits of the power. If Mrs. Austin had died, during the life of Charles, leaving no testamentary paper except the will itself, no question could have arisen. She executed the power by will; she distributed the whole remainder; she divided it among the prescribed beneficiaries; and in deference to her husband's wish recreated a trust similar in all respects to his. But her will was revocable and ambulatory until her death. It effected nothing and accom-

plished nothing until that event, and when death came a codicil had been executed which changed the situation. Charles had died before that codicil was made, but the will had provided, as we have seen, for the emergency which happened of his leaving no issue. Nevertheless, Mrs. Austin executed a codicil endeavoring to give the share a new direction. She appointed it to go to William and Frederick Oakes and so transgressed her authority. One of several consequences resulted. We must treat the codicil as an integral part of the will, and the appointment as made at her death, and by the will and codicil, read together as constituting one instrument; and so it will follow either that the whole appointment was void and the equal division of the testator operated, which is the appellant's contention; or that the unauthorized appointment was simply a nullity and left the valid appointment of the will undisturbed; or that the appointment of the codicil, if invalid, was only so as to that share and left the remaining appointments good; which last two propositions are asserted by the respondents.

Confining our attention, as we must, to the will and codicil of Mrs. Austin as an execution or attempted execution of the primary power; and conceding also, as in our view of the case has become inevitable, that her appointment to the Oakes children is invalid, because it transcends the authority of the primary power, we may first inquire whether the will of Mrs. Austin, as distinct from the codicil, did, in truth, make a complete appointment of the whole estate to the permitted devisees, as we have already asserted; and if so, whether that valid appointment is mutilated or destroyed by the invalid effort of the codicil. The appellants claim that Mrs. Austin's will failed to appoint the one sixteenth of the estate which would have gone to Charles if he had lived, or to his issue if it had existed, for the reason that the devise over to his uncles and sister took effect only upon his death without issue after the death of the widow, and since he died in her lifetime the will made no provision for the emergency. I do not so understand its terms. It is conceded on all sides that the appoint-

ment is to be construed precisely as if it had been a devise or bequest by the testatrix of her own property. In such case the general rule is that the death which gives effect to the devise over is a death in the testator's lifetime, unless the language used indicates a different meaning. The subject was discussed in *Vanderzee* v. *Slingerland* (103 N. Y. 47, 54) where it was said by ANDREWS, J., that a devise to A, and in case of his death without issue, then to B, refers to a death in the lifetime of the testator, although the English rule, at least as to personalty, appears to be that the reference is to a death either before or after that of the testator. When, therefore, Mrs. Austin appointed the share of Charles to him, and, should he die without issue, then over to her living sons and grand-daughter, the reference is to a death in her lifetime, or at least to one occurring either before or after her own decease, unless something else in the will limits the expression to a death succeeding hers. It is argued that there are such expressions. One of them is found in the fact that in making the devise over she refers to the codicil of her husband, as distinguished from his will as the source of her authority. In our view of the case, that was simply a mis-recital of the source of her authority, which was really derived from the will itself, and, as we shall see, affords no rational clue to the meaning of the testatrix. But attention is called to her description of the share devised. The words are " the principal sum so held in trust for the one so dying shall go," etc. And it is argued that, as no principal sum could be held in trust until by the death of Mrs. Austin the trust which she created anew was to come into existence, the death referred to must have been one occurring after the share had gone into the trust, and so after the death of Mrs. Austin. The suggestion would be very forcible if the trust described in her words referred, and could only refer, to the trust which she created for his share, and which the testator had dictated. But I think it does not. When these words were used no such trust. had as yet been created by her. That created by the testator was to operate in the future, but had not as yet been formulated by her when

the words quoted were used. To what " principal sum held in trust " did she then refer? The answer is easy. If we go back to the will of her husband, we shall see that he uses this language: " I give bequeath and devise to Mrs. Winifred Austin * * * all my estate, real and personal, upon *trust* to hold the same during her life, and apply the rents and income thereof to her own use, and at her death the said *trust estate* is to be divided," etc. It is plain that he regarded the principal of his estate as held in trust by the life tenant for the ultimate use of his children. In her will Mrs. Austin recites literally her husband's language; in making her appointment of the whole estate she describes it as " bequeathed and devised to me, *in trust* by my said husband; " and so, when she comes to the shares of Charles and James, she describes them as " the principal sums so held in trust for the one dying " evidently meaning the shares which she had designated and was herself holding in trust for the beneficiaries during her own life. It is inexcusable to divert her language from the trust to which she did refer, whether it was strictly such or not, and apply it to one which at the moment she had not even created or formulated in words. I discover, therefore, nothing in the will which can drive us to the narrow construction that, by the death of Charles without issue, the testatrix meant only such a death occurring after her own.

I have not overlooked the argument founded upon the use of the word " so " in the expression " principal sum *so* held in trust." It occurs after the recital in Mrs. Austin's will of her husband's codicil, as containing the power under which she was about to act, and it is said, as that codicil framed a trust to commence after the widow's death, the word " so " indicates that trust as referred to. But that explanation does not explain. " So held in trust " implies reference to a fund then, at the moment, " *held* in trust," possessed by somebody as trustee for some one else as beneficiary, and " *so* held in trust," as had been before stated and described. That sketches accurately the " principal " of the estate already mentioned as held in trust by the life tenant for the benefit of the

devisees, and actually possessed by her in her confessed character of trustee, but does not describe a mere future and paper trust, under which nothing is held, and which never could come into existence at all if Charles should die childless in her lifetime. And thus the conviction is strengthened that Mrs. Austin did, fully and completely and lawfully, execute by her will the appointment authorized by her husband, unless the further objection of the appellants is sound — that her codicil, appointing the share of Charles to the Oakes children, operated as a revocation of the devise over, although itself null and void.

That proposition strikes me as both unreasonable and illogical. The appellants are required to argue, as they do argue, that the appointment of Mrs. Austin's codicil was absolutely null and void, because it transcended the authority conferred ; and not only that, but was so vicious and bad that it dragged down with it the other appointments which did not exceed the power, and yet was good enough and had force enough to revoke and annul, without words of revocation, an appointment complete and lawful and fully within the scope of the power conferred. There is said to be authority for that doctrine, but if there is, we should hope for the needed courage to dissent from its determination, for it will not bear the scrutiny of common sense, or harmonize with the plainest dictates of justice. I think a very brief analysis will show that I do not speak too strongly.

What, then, is the ground of the alleged revocation ? There are no words to that purport, or which declare that intention, and so it rests alone upon an implication born of the alleged repugnancy of the two provisions. But are they necessarily repugnant ? They would be if the devise to the Oakes children was good ; but are they if it is bad ? Can nothing be repugnant to something and turn that something into nothing ? Suppose Mrs. Austin had written out in full the thought which was in her mind when she executed the codicil : she would have said, I prefer to give the share of Charles to the Oakes children, if I can ; that is my preference, and I

give it to them if I may do so according to law; and then suppose that it should turn out that she could not lawfully make the change; does it follow, in that event, that she meant to revoke the valid appointment? It seems to me that the implied revocation is wholly conditional, and the condition has failed. The provision was rather a preference than a revocation. Certainly, we must infer that she preferred to give the share to the Oakes children instead of her own, *if she could;* but as certainly we have no right to infer that, if she could *not*, she still meant to deprive her own children of what she had given them in the proportions assigned. There is no warrant for that. There is no word in the will and no fact in the case to charge her with an intention to withdraw her devise over to her children in the emergency that she could not gratify her preference for the children of her daughter. A revocation of an earlier disposition of a will by a later one, or by a codicil, on the ground of repugnancy, is never anything but a rule of necessity, and operates only so far as is requisite to give the later provision effect. We have said that in distinct and unqualified terms. (*Pierpont* v. *Patrick*, 53 N. Y. 595.) But no revocation could give effect to this codicil. We have said again that where provisions are repugnant it is our duty to preserve the paramount intention of the testator at the expense even of some subordinate particulars. (*Taggart* v. *Murray*, 53 N. Y. 233.) There is no possibility of mistaking what that paramount purpose of Mrs. Austin was. Most of all she desired to execute the power of appointment with which she was intrusted, and distribute the estate in accordance with that authority. She did so by her will, but in the end preferred to give a reversion to the Oakes children if she lawfully might. That preference was wholly subordinate to the execution of her power, and no violence is done to her intention if, that failing, the disposition of her will is suffered to stand; for I deem it beyond a reasonable doubt that if she had known what we now know, that an appointment to the daughter's

children was not within her authority, she never would have made it but would have suffered the disposition of her will to remain. In *Churchill* v. *Churchill* (L. R., 5 Eq. Cas. 44), the testator exercising a special power appointed a fund properly to his three daughters, who were the objects of the power, and then by a later provision limited the share of each daughter to a life estate with remainder over to her children who were not objects of the power. Lord ROMILLY held that "as the subsequent condition and restriction are simply void, the original gift remains unaltered and unaffected by that which has, in truth, no efficacy whatever." In *Duguid* v. *Fraser* (L. R., 31 Ch. Div. 449) the testator gave to his sister a fund for life with power to divide it by will between her husband and children as she might determine. She made a will effecting such a division. After its execution one of the sons died and by a codicil she bequeathed his share in trust for his children, who were not objects of the power. The court held the last appointment void, but held, also, that since there were no words of revocation the bad appointment could not serve to revoke the good one. The appellant's counsel criticise this case severely. They say that it is opposed to the American doctrine and cite three authorities for their assertion. (1 Redfield on Wills, 288; *Westcott* v. *Cady*, 5 Johns. Ch. 344; *Lynch* v. *Pendergast*, 67 Barb. 501.) No one of these sustains it in any respect or degree. The first holds the familar doctrine that will and codicil must be read together. Nobody as yet has disputed that. The two cases cited were instances in which the later and repugnant provisions were valid, and to give them the effect to which they were, therefore, entitled it was necessary to treat as revoked certain prior provisions; and nobody doubts that. The counsel further say that the decision was only that of a single judge and was never reviewed by an appellate court. That might weaken its authority if any well considered case had been decided to the contrary, but even then its justice, and good sense would remain. It is again insisted that in the case cited the gift in the codicil could only

take effect by way of revocation *pro tanto* of the gift in the will which had an effect over all the funds unless the codicil had altered it, while here there was a new provision and the will did not affect the whole fund. We have already held that the codicil can only take effect, if at all, by way of revocation, and that the will does dispose of the whole fund.

One added suggestion is necessary on that subject. It is quite true that Charles had no share under Mrs. Austin's will until that will took effect, and that prior to that event the provision for him rested in intention merely, which was revocable at any moment before her death; but reading the will together in all its parts it is impossible not to see that the final clause relative to the death of Charles was intended, in case of such death without issue, to carry the share limited to him by the terms of the will to his uncles and sister, and so dispose of the whole estate. Having allotted to him a share she regarded herself as holding that in trust for him, instead of the larger share which she did hold for him under her husband's will.

Upon the argument some other authorities were cited. *Beard* v. *Beard* (3 Atk. 72), decided in 1744, held that a will "made in a passion" at a tavern, giving the whole estate to a brother, was revoked by a later deed-poll of the whole estate to the wife, although the deed was inoperative and could not take effect. No such revocation of a will could occur in this state, and our statute was intended to render such revocations impossible, and condemns the principle upon which they were founded, and, at least, there was power in the grantor to convey, although none in the grantee to take. Other cases cited on the argument have been examined but without changing our conclusion. And so I think we should declare that the appointment to the Oakes children in Mrs. Austin's codicil was null and void, but that her appointment in her will was a lawful and valid appointment of the whole estate to living persons who were objects of the power, and that the property should pass accordingly.

The judgment of the General Term should be modified to correspond with that conclusion, and as modified be affirmed, with costs to all parties out of the estate.

All concur.

Judgment accordingly.