CASE 49.--ACTION BETWEEN THE UNITED STATES FIDELITY & GUARANTY CO. AND GEORGE L. DOUGLAS' TRUSTEE AND BETWEEN WILLIAM D. CARTER, AND OTHERS AND ELLERBE W. CARTER AND OTHERS.—June 18, 1909.

## U. S. Fidelity & Guaranty Co. v. Douglas' Trustee Carter v. Carter

Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

SHACKELFORD MILLER, Judge.

From the judgment plaintiffs appeal and P. M. Clark substituted trustee, prosecutes a cross appeal. —Reversed.

1.  Wills — Construction —"Grandchildren."— Testator by the third clause of the codicil of his will created two life estates, one for the use of his daughter and the other for the use of his grandchildren, declaring that, if any of the grandchildren shall die, leaving descendants living, such descendants shall take per stirpes the same interest they would have taken if the property were then to descend, and the rest should be managed and controlled by the trustee for the use of testators' surviving grandchildren without the right to convey, anticipate, or incumber the same, etc. Held, that the word "grandchildren" as there used should be construed to include not only those born and living or having died leaving issue at testator's death, but also any who might be born to testator's daughter during her lifetime.
2.  Perpetuities—Remainders—Validity.—An estate in remainder cannot be created to take effect beyond the end of a life or

lives in being and 21 years and 10 months thereafter, the remainder being void if there is any uncertainty or doubt that it will vest during that period.

2. Perpetuities—Wills—Construction.—Testator left a daughter and certain grandchildren, him surviving. By a codicil to his will he devised the residue to trustees for the daughter's use during her life, without power of alienation, and after her death to testator's grandchildren, the net income without right of alienation, except that at the death of any of such grandchildren an aliquot part of the property should pass to the grandchildren's descendants per stirpes, and in default of descendants living at the death of each of such grandchildren to pass according to the law of descent. Held, that since grandchildren entitled to take might be born after testator's death, the remainder was void as violating the rule against perpetuities.

4. Wills—Construction.—While a whole will must be considered in determining the intention of a testator, the language used in making a specific bequest can not have a controlling influence in interpreting the language used in dealing with the different subjects.

5. Wills—Specific Bequest—Designation of Beneficiary.—Specific designation of the object of testator's bounty is essential to the creation of a specific bequest.

6. Wills—Revocation—Inoperative Codicil.—Where a codicil created a void remainder contained no revocation clause, and it did not appear by implication that testator intended the codicil to revoke the former will, the will on the codicil being declared inoperative, remained in force.

7. Trusts—Sale of Property—Misconduct of Trustee.—A trustee sold certain land belonging to an estate, receiving as part of the purchase price, five notes for $5,000 each, payable on or before 10 years, bearing 5 per cent interest. Held, that a sale of four of the notes at par and a pledge of the fifth note to secure the trustee's agreement to make the notes yield 6 per cent. interest, payable semiannually, by which the trust estate lost $1,900, constituted a misappropriation of the funds of the estate for which the trustee and his bondsmen were liable.

8. Trusts—Trustees—Accounting—Claims—Liability of Surety.—A claim for expenses incurred in making an examination of the affairs of a trustee after it had been discovered that he had defaulted was not a charge for which the trustee's surety could be made to answer.

BULLITT & BULLITT and W. D. CARTER for appellant.

## AUTHORITIES.

1. What is the rule against Perpetuities? 2 Blackstone's Commentaries, 174; Williams on Real Property, 318; 1 Perry on Trusts, Sec. 381 (5th Ed.); 2 Underhill on Wills, Sec. 883. Moore's Trustees v. Howe's Heirs, 4 T. B. Mon. 199, 201; Ludwig v. Coombs, 1 Metcalf, 128, 132; Cattlin v. Brown, 11 Hare, 372, 375; Coleman v. Coleman, 23 Ky. Law Rep. 1476 Winslow v. Mills, 32 N. E. 353 (Mass.); Brown v. Columbia, 123 Ky. 775; Fowler v. Ingersoll, 28 N. E. 471 (N. Y.); Schettler v. Smith, 41 N. Y. 329; Caldwell v. Palmer, 1 Clark & Finnel, 372; Proprietors of Battle Square Church v. Grant, 69 Mass. 125; Stevens v. Evans, 30 Ind. 39; Moody v. Walker, 3 Pike 147; Ackerman v. Ackerman, 14 N. J. Eq. 25; Howe v. Howe, 38 N. E. 1083; De-Wolf v. Lawson, 61 Wis. 561.

2. Common law rule against perpetuities applicable in Kentucky. Moore's Trustees v. Howe's Heirs, 4 T. B. Mon. 199, 201; Ludwig v. Coombs, 1 Metcalf, 128, 132.

3. The rule against perpetuities applies to "personal" as well as "real" estate. Moore's Trustees v. Howe's Heirs, 4 T. B. Mon. 199, 201; Ludwig v. Coombs, 1 Metcalf, 128, 132. Coleman v. Coleman, 23 K. L. R. 1476; Hubley v. Long, 2 Grant Cas. (Pa.) 268; Hall v. Hall, 123 Mass. 120, 124.

4. Alleged power of sale in trustee does not relieve the will from the operation of the rule against perpetuities. Winslow v. Mills, 32 N. E. 353 (Mass.); Fowler v. Ingersoll, 28 N. E. 471 (New York).

5. In contemplation of law Mrs. Carter might have had children born after the death of her father, the testator. Brown v. Columbia Trust Co., 123 Ky. 775, 781; May v. Walters, 30 K. L. R. 59, and the authorities quoted supra and infra.

6. The provisions of the codicil relating to grandchildren of the testator contemplates grandchildren born after as well as before his death. Sims v. Skinner's Exors., 118 Ky. 573; Adams v. Adams, 20 K. L. R. 655; Turner v. Patterson, 35 Ky. 293; Lynn v. Hall, 101 Ky. 739; Walter v. Crutcher, 54 Ky. 2; Goodrich v. Schaefer, 24 K. L. R. 219; Webb v. Holmes, 42 Ky. 404; Hall v. Hall, 124 Mass. 120.

7. Distinction between a 'severable" devise and devise to a class. Wilkinson v. Duncan, 38 Beav. 111 (1861); Greenwood v. Roberts, 15 Beav. 92 (1851); Cattlin v. Brown, 11 Hare, 372 (1853).

BODLEY & BASKIN and DODD & DODD for P. N. Clark, trustee.

POINTS MADE AND DISCUSSED IN FAVOR OF THE JUDG-
MENT AND AUTHORITIES CITED IN SUPPORT THEREOF.

1. Where a principal and surety are jointly sued for a money judgment the surety can not deny all liability and in the same pleading assert a counterclaim and cross-petition for indemnity, nor ask for restitution, until it has been damnified. Civil Code, Secs. 661, 662; 9 L. R. A. 283, Morrison v. Citizens Nat'l Bank; 122 Ky. 760, Sanders v. Herndon; 31 Ky. Law Rep. 259, Walters v. Akers; 24 Ky. Law Rep. 1949, Marks v. Ganz; 91 Ky. 517, Bamberger v. Moayon.

2. Where one becomes surety on a bond for the faithful performance of the duties of a person in an official or fiduciary character, he is estopped from denying the existence of such office or trust, and is liable at common law for any defalcation arising under the bond. 110 Ky. 837, National Surety Co. v. Arteburn; 123 Ky. 621, Clay v. Chenault; 124 Ky. 136, Morath v. Webber; 106 Ky. 424, Wood v. Friendship Lodge; 47 Ky. 123 Jones v. Bank of Tenn.; 23 Ky. Law Rep. 1282, Bennett v. Bennett; 22 Ky. Law Rep. 716, Green v. Ponder; 15 Ky. Law Rep. 830, White v. Mayhall; 15 Ky. Law Rep. 710, Mercer v. Glass.

3. The trusts created by the will are valid and enforceable. Section 2360, Ky. Stat; 124 Ky. 816, Howard v. Cole; 16 L. R. A. 321, Bingel v. Volz; 99 Ky. 284, Bedford v. Bedford; 116 Ky. 65, Hussey v. Sargent; 56 Ky. 86, Davis v. Wood; 32 Ky. Law Rep. 411, Wood v. Wood; 91 Ky. 160, McDaniel v. McDaniel; 110 Ky. 960, Dohn v. Dohn; 120 Ky. 302, Porter v. Porter; 120 Ky. 712, Logan v. Bean; 119 Ky. 899, Smith v. Smith; 121 Ky. 16, Hall v. Wright; 123 Ky. 781, Brown v. Col. Trust Co.; 147 Mass. 530, Dorr v. Lovering; 190 Mass 435, Minot v. Doggett; 113 U. S. 340, McArthur v. Scott; 25 Ky. Law Rep. 1715, Pullins v. Board of Education; 97 N. W. Rep. 259, Danforth v. Oshkosh; 52 N. W. Rep. 27, in re Tower's Estate; 91 N. W. Rep. 87, Becker v. Chester.

4. The five shares of the grandchildren are severable, and the power of alienation given does not violate the law. 25 Ky. Law Rep. 2122, Johnson v. Johnson; 46 Ky. 611, Att'y-General v. Wallace; 53 Ky. 269, Armstrong v. Armstrong; 4 Ves., Jr., 227, Thellusson v. Woodford; 61 N. Y. 638, Woodruff v. Cook; 36 N. Y. 543, Harrison v. Harrison; 133 N. Y. 134, 473, Kennedy v. Hoy; 147 Mass. 530, Dorr v. Lovering; 190 Mass. 435, Minot v. Doggett; 97 N. W. Rep. 259, Danforth v. Oshkosh; 52 N. W. Rep. 27, In re Tower's Estate; 91 N. Y. 87, Becker v. Chester; 77 N. E. Rep. 999, Mount's Will; 8 Rich Eq. (S. C.) 241, Lowery v. Muldro; 30 Beav. 111, Wilkerson v. Duncan; 19 N. E. Rep. 481, Vanderpoel v. Loew.

5.   No abatement of suit on account of death of Sally R. Carter, July 19, 1908.   Sec. 21 Civ. Code; 31 Ky. Law Rep. 259, Walters v. Akers; 122 Ky. 760, Sanders v. Herndon; Secs. 85, 86, 97, 111, 117, and 500, Civil Code.

6.   The cross-appeal on the two rejected items of $1,900 and $32.   79 Ky. 258, Hirschman v. Brashears; 81 Ky. 132, Magill v. Mercantile Trust Co.; 92 Ky. 566, Merchants Building Asso v. Jarvis; 12 Ky. 109, Floyd's Heirs v. Johnson; 62 Ky. 221, Williams v. Williams.

7.   New parties can not be made for the first time in this court. Sec. 110 of Ky. Constitution; Sec. 949 of Ky. Statutes; Sec. 734 of Ky. Civil Code.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

These two appeals grow out of the same state of facts, and were heard together.   The legal questions involved are interesting and important, and in order that they may be clearly understood we will state with more than ordinary detail the facts out of which they arise.

In October, 1889, George L. Douglas died intestate in Jefferson county, Ky.   He left one child, Mrs. William R. Carter, and five grandchildren, her issue, surviving him.   At the time of his death Mrs. Carter was 55 years of age, and she died in July, 1908, leaving surviving her as her only children the five who were living at the death of her father. In March, 1881, George L. Douglas made his will.   In this will he appointed John W. Barr, and William D. Carter, his grandson, executors, and devised to them the whole of his estate for the purposes and upon the trusts mentioned in the will.   The only clauses in the will that we deem it necessary to recite are the second, reading:

"They shall have the entire control over and management of my estate, except as herein provided, and

they shall hold the same in trust and for the sole and separate use of my daughter, Sally R. Carter, during her life, free from the control of any husband she may have, and they shall pay the whole income after paying legacies, taxes, insurance and other expenses to her personally, and not to her husband, and she shall have no power to sell or incumber said estate or income or to charge the same by way of anticipation. * * *

"Fourth. They shall have power with the written consent of my said daughter to make advances to any of her children, after they attain the age of twenty-one years, not exceeding in amount the two-thirds of his or her share in my estate.

"Fifth. Upon the death of my said daughter, my executors shall divide the whole estate equally between her children and the issue of such as may be dead, first deducting any advances made by me to any of them, as will appear from my book of advances, such issue taking per stirpes, that is, the share of their parent; but my executors shall retain the control and management of the share of each, until he arrives at the age of twenty-one years, and in the meantime pay to his guardian of the income of his share only what they shall deem a sum sufficient for his proper support and education. If, however, any child or grandchild shall die under twenty-one years of age and without issue, the share of such child or grandchild shall go to his surviving brothers and sisters, or the issue of such as may be dead, the issue taking per stirpes. * * *

"Seventh. * * * In all cases where the word 'he' is used in speaking of my daughter's children or their issue, it is intended to embrace the female as well as the male."

On November 22, 1884, he made the following codicil:

"(1) I have given certain sums of money to my grandsons, W. D. Carter and Kearsley Carter, Jr., which under all the circumstances I consider proper to estimate as being thirty-five thousand dollars to each, and both of them are hereby released from any debt due by either of them to me.

"In order to equalize my three other grandchildren, I now bequeath to John W. Barr, as trustee, the sum of one hundred and five thousand ($105,000) dollars, thirty-five thousand ($35,000) dollars to be held for the use and benefit of my granddaughter, Ducilla R. Carter; a like amount for the use and benefit of my grandson, L. D. Carter; and a like amount for the use and benefit of my grandson, Stuart R. Carter, each sum to be on the following trusts, viz: Until the beneficiary attains majority such part of the income as my daughter shall designate, shall be paid to her for the support and education of the beneficiary and in case of her death, such part as shall seem discreet to the trustees shall be applied to this purpose and the balance shall be reinvested and the capital and accumulation paid to the beneficiary at majority. In case of the death of the beneficiary before majority, leaving issue, then the fund and accumulation shall go to such issue, and in default of issue shall go to the surviving brothers and sister, or to the issue of such as may be dead per stirpes, provided that such part as may thus pass to a minor brother or sister shall be held in like trust and upon the same conditions as are above declared. The trust in reference to my granddaughter is declared a sole and separate use.   *   *   *

"(3) All the rest and residue of my estate, real, personal and mixed left after payment of my debts and the satisfaction of the legacies contained in the first clause of my will and the first and second clauses of this codicil—I devise and bequeath to John W. Barr as trustee in trust as follows: For the sole and separate use of my daughter, Sallie R. Carter, during her life, but without power to alien, encumber, charge or in any way anticipate its rent or enjoyment, and after her death if any of my grandchildren shall be then dead leaving descendants then living, such descendants shall take per stirpes the same interest they would take if the property were then to descend from me and the rest shall be held, managed and controlled by the said trustee and the net income used by him in such manner as in his discretion may seem best for the interest of my surviving grandchildren, and his discretion shall extend to paying the share of each in said income into his hand or using it for his support or paying it into the hands of his wife, or using it for the support of such wife, and his children, or allowing part or all of it to accumulate and subsequently using the accumulation in the same way or allowing them to become and pass as part of the capital and none or all of said grandchildren shall have any power to charge, anticipate, alien or encumber said income or property, nor shall the same be in any manner subjected to his debts and the trust as to my granddaughter's share shall be a sole and separate use upon the death of any of said grandchildren an aliquot share in said property shall pass to his descendants per stirpes and in default of descendants living at his death shall pass according to the laws of descendant as if it then descended from

him, provided that the shares of his surviving broth-
ers and sister shall continue with their own shares in
said trust and be governed by its terms.''

On November 25, 1884, the testator made the fol-
lowing change in the codicil executed by him on No-
vember 22, 1884:

''Instead of paying over to the beneficiary of the
several bequests of thirty-five thousand dollars, men-
tioned in said codicil, the said trustee shall pay to said
beneficiary at majority one-half of the funds so raised
for his benefit, with one-half of the accumulations,
and the other half of said funds and accumulation
shall remain in trust and subject to all of its terms
and conditions until the beneficiary attains the age
of twenty-five years and be then paid over. The
The words 'he,' 'his' and 'him,' as used in the will
and both codicils, are meant to include also the femi-
nine.''

John W. Barr, mentioned in the will and codicils,
qualified as executor and trustee, and acted in these
capacities for some years, when he resigned, and
Thomas P. Langdon was appointed in his place.
Upon the resignation of Langdon, Lattimore D. Car-
ter, one of the grandsons of the testator, was ap-
pointed trustee in February, 1902, and qualified with
the appellant, the United States Fidelity & Guaranty
Company, as his surety. Carter continued to act un-
til September, 1907, when he resigned, and P. N.
Clarke qualified in his place. During the time Carter
acted as trustee, he misappropriated to his own use
$99,739.73 of the trust funds. Clarke, upon his ap-
pointment, took steps to recover the fund so con-
verted, and succeeded in securing $29,757.79, leaving
a balance of $69,981.94 due, for which sum, together

with $32 costs incurred for services rendered by the commissioner, he instituted suit against Carter and his surety. Upon proof taken in behalf of Clarke, the case was submitted, and judgment rendered against Carter and his surety for the full amount claimed, except two items—one for $32, and the other for $1,900. These rejected items we are asked, in a cross-appeal prayed by Clarke, to allow, and will dispose of them later on.

In July, 1908, while the suit of Clarke against Carter was pending, Mrs. Sallie R. Carter died. Upon her death the United States Fidelity & Guaranty Company offered to file a pleading, in which it alleged in substance that the will and codicils of Mr. Douglas, except in so far as they created a trust for the use and benefit of Mrs. Carter during her life, were void, because in violation of the rules against perpetuities. In the pleading it insisted (1) that at the death of Mrs. Carter the powers of Clarke as trustee terminated; (2) that the estate vested in fee in the five children of Mrs. Carter, of whom Lattimore D. Carter was one, they being devisees in remainder under the original will; and (3) it was sought to subject the interest of Lattimore D. Carter in the estate to the payment of whatever amount it might be required to pay as his surety. The chancellor, being of the opinion that Lattimore D. Carter had no interest in the estate that could be subjected to the payment of the demands of his surety, refused to permit the tendered pleading to be filed.

The principal question in the case is whether or not the provision in the third clause of the codicil, executed November 22, 1884, is void because in violation of the law against perpetuities. If the codicil is void, then upon the death of Mrs. Carter the es-

tate passed in fee to her children under the fifth clause of the will, providing: "Upon the death of my said daughter, my executors shall divide the whole estate equally between her children and the issue of such as may be dead, first deducting any advances made by me to any of them, as will appear from my book of advances. * * *" On the other hand, if the codicil is valid, Lattimore ·D. Carter did not take any interest in the estate that could be subjected, because the third clause of the codicil provides in part that after the death of Mrs. Carter the trustee shall hold the estate—"and none or all of said grandchildren shall have any power to charge, anticipate, alien or encumber said income or property, nor shall the same be in any manner subjected to his debts and the trust as to my granddaughter's share shall be a sole and separate use upon the death of any of said grandchildren an aliquot share in said property shall pass to his descendants per stirpes and in default of descendants living at his death shall pass according to the laws of descent as if it then descended from him, provided that the shares of his surviving brothers and sister shall continue with their own shares in said trust and be governed by its terms."

It will be observed that the testator, by the third clause of the codicil, created two life estates: First, for the use and benefit of his daughter, Mrs. Carter; and, second for the use and benefit of his grandchildren. In other words, his purpose was to keep the principal of his estate intact and in the hands of the trustees during the life of his daughter and her children. It is the contention of Clarke that under these testamentary papers the whole of the estate upon the death of his daughter vested in remainder in the five grandchildren living at the time the will

was made and when the testator died, to the exclusion of any other children that Mrs. Carter might have. The correctness of this position is challenged by the surety company, which insists that if Mrs. Carter had any other children they would share equally in the estate with the grandchidren living at the time of the death of the testator; and, therefore, the argument is made that, as Mrs. Carter might have given birth to children after the death of the testator, the third clause of said codicil is void because in violation of the law against perpetuities.

The validity of the first clause of the codicil, which creates an equitable life estate in Mrs. Carter, is not questioned, but all of the remaining clauses, and especially the third clause thereof, are vigorously assailed as attempting to create a perpetuity. The rule in question is that an estate in remainder can not be created to take effect beyond the end of a life or lives in being and 21 years and 10 months thereafter. To be valid, the remainder must of necessity vest within the above-named period. If there is left any room for uncertainty or doubt that it will do so, the devise creating it is void. This principle has been adopted and applied by the courts of England and the United States as well, and this court, in the case of Moore's Trustees v. Howe's Heirs, 4 T. B. Mon. 199, recognized the soundness of this rule in the following excerpt:

"To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve. That period is for a life or lives in being, and 21 years and a few months, and the rule is the

same in this country in relation to both real and personal estate. A man can not, therefore, devise over an estate to take effect after that period, and, if he does so, the limitation over will be void, and the person who takes the preceding estate will have the fee-simple or absolute property in the estate devised.''

And in Ludwig v. Combs, 1 Metc. 128, this rule was again recognized and applied by this court in the following language: ''The rule is, as applied to a deed like the present, in which the grant is good in part, and void for remoteness as to the residue, not that the limitation may take effect, but that it must certainly, and beyond every contingency, take effect within 21 years and 9 months after a life or lives in being at the time of its creation; otherwise the limitation must be held void for remoteness.''

To the same effect are Coleman v. Coleman, 65 S. W. 832, 23 Ky. Law Rep. 1476, Brown v. Columbia Trust Company, 123 Ky. 775, 97 S. W. 421, 30 Ky. Law Rep. 110, and May v. Walters' Executors, 97 S. W. 423, 30 Ky. Law Rep. 59.

By these authorities it is made clear that this court is thoroughly committed to the rule against perpetuities in either real or personal property, for in none of the foregoing authorities has any distinction been drawn in dealing with either class of property, and in Moore's Trustee v. Howe's Heirs, supra, it is expressly declared that the rule is the same in this country in relation to both real and personal property. Hence, this rule being in force in this state, and applicable to real or personal property alike, article 3 of said codicil is void if in fact there is an attempt therein on the part of the testator to create an estate beyond the end of a life or lives in being at

the death of the testator and 21 years and 10 months
thereafter.  An interpretation of the fair meaning
of the language of the article, when read and consid-
ered in connection with the whole will, must be de-
cisive of this question.

It is the contention of appellees that the testator,
by the terms of his will, specifically devised his resi-
duary estate to the five children of his daughter who
were then living.  Article 3 of the will, when consid-
ered alone, does not support this contention, for the
children are not specifically named in said article, nor
does any fair interpretation of the language used
therein justify the conclusion that the testator was
intending to limit this bequest to the five grandchil-
dren who were then living; on the contrary, the fair
and reasonable and ordinary meaning of the lang-
uage of this article is that, by the word "grandchil-
dren" as used therein, the testator meant all of the
grandchildren then in being, and any that might·
thereafter be born to his said daughter.  It is true
that at that time she was 55 years of age, but this
court has never fixed a period in a woman's life be-
yond which she might not have children, and, in fact,
it was specifically declared in Brown v. Columbia
Trust Co. that no age limit would be fixed beyond
which this court would feel justified in declaring that
a woman would not or could not give birth to a child;
hence, the fact that testator's daughter at that time
was 55 years of age does not warrant the conclusion
that her father was, in the draft of his will, intending
to declare that she should not thereafter have chil-
dren, or that if any such were born to her they would
not be the recipients of any part of his bounty.

But appellees insist that, when article 3 is read in
connection with article 1 of said codicil, the intention

of the testator is made plain. In that clause he was setting apart to three of his grandchildren, or for their use, a specific sum of money to equalize them with two others of his grandchildren to whom he had theretofore given a like sum. The subject-matter of this article of the codicil is wholly disconnected with, and foreign to, the subject-matter of article 3. At that time he had but five grandchildren. He had already given a certain sum of money to two of them, and he desired to give to the other three a like sum. The language of this article can have no more bearing upon a proper determination of the meaning of the language used in article 3, wherein the testator was making a disposition of the residuum of his estate, than it would if he had in this article only been directing his executor to give to each of the remaining grandchildren then living a gold watch because he had theretofore given to two of them gold watches.

While it is a cardinal rule of construction that the whole will must be taken into consideration in determining the intention of the testator, it is equally true that the language used by the testator in making a specific bequest can not be used to exercise a controlling influence in interpreting the language used by the testator in dealing with an entirely different subject. In making a special bequest, it is absolutely essential that the object of the testator's bounty be designated. In the original will, the testator expressly provided that upon the death of his daughter all of his estate should go to her children then living, in fee.

By article 3 of the codicil in question it is expressly provided that no part of his estate shall go to his grandchildren upon the death of their mother, but that it shall be held in trust, and the income thereof

used by the trustee, either for the benefit of said grandchildren, or else to increase the estate in the hands of the trustee, in his discretion, which under the provisions of the codicil, would ultimately go to the children of his grandchildren. The language used in article 1 of the codicil can not be accepted as exercising a controlling influence in interpreting the language used in article 3, any more than can the language used in any other clause of the will, or its codicils not bearing upon the same subject be made to exercise a controlling influence over article 3 in the interpretation of the language used therein. The correct rule is that, in construing any particular section of a will, the language used by the testator in other sections of the will dealing with the same subject may . properly be taken into consideration in aiding the court. But this rule can not properly be extended so as to justify the court in construing the language of the testator in dealing with one subject by language used by him when dealing with an entirely different subject.

It will be observed that the only clause in the entire will, or its codicils, in which the grandchildren then living are specifically named, is article 1 of the codicil, and that was the clause in which he was giving a specific sum of money to equalize three of them with the other two children to whom he had theretofore given a like amount. In all of the remaining clauses of his will he speaks of his devisees as his grandchildren, and this court has uniformly held that the word ''grandchildren'' means not only the offspring of children in being at the time of the death of the testator, but any that may be thereafter born. This is the only just, reasonable, and fair rule of construction. A child of a son or daughter is no

U. S. Fidelity & Guaranty Co. v. Douglas' Trustee—Carter v. Carter.

less a grandchild because born after the death of its grandparent, and common justice would require that after-born children should be entitled to participate in the residuum of the estate unless there is some provision in the will evincing clearly an intention on the part of the testator that they should not be permitted to do so. Even when this is done, in a case like that under consideration, the after-born grandchildren would not stand upon the same footing as those born during the life of the testator, for the reason that the testator has given to each of them special bequests to the value of $35,000, whereas the after-born children, if there were any such, under the terms of the will, would only be entitled to share with the others in the residue of the estate.

One of the cardinal rules of construction of a will is that the court must determine what is meant by the language used, and not what was intended to be meant. The language used in article 3 of the codicil does not justify the court in holding that the testator intended to limit the residuum of his estate to the grandchildren then living. On the contrary, the language used not only justifies, but demands, a different interpretation, to-wit, that all the children of the children of his daughter—those then in being, and any that might thereafter be born—should participate in the division of the residuum of his estate. It may be conceded that the testator in fact contemplated that his daughter would not bear other children, and that he contemplated that the estate would pass, under the codicil, to the five grandchildren then living, but the fact remains that he did not in the codicil exclude after-born children, and, by its plain terms, if his daughter had borne other children they would have taken under it. This being so, the

rights of the parties must be determined by his intention as expressed in the codicil.

The conclusion which we have reached is strengthened by an examination of the language used by the testator in making disposition of the residuum of his estate under the original will, and comparing it with that used when dealing with the same subject in the codicil of his will, drawn some three years later. In the original will he provides that upon the death of his daughter his executor should divide the whole of his estate equally among her children, and the issue of such as may have died leaving children, after deducting advances made to any of them where it should appear from an inspection of his books that such advances had been made. The only construction that can be placed upon this language is that, at the death of his daughter, any of her children then living, whether born before his death or after, and any children of such children, if any of them should have died before their mother, leaving children, should participate in the distribution of his estate.

Here, then we have a desire on the part of the testator, clearly expressed, that all of the children of his daughter should participate in the ultimate division of his estate. He did not make, nor did he attempt to make, any distinction between the children then living and any children that might thereafter be born to her, and yet the original will was drafted but something like three years before the codicil in question. What was his purpose in drafting the codicil? The provision which he made for his daughter in the original will and the codicil is practically the same. The only substantial difference is that in the codicil the testator attempted to tie up the estate in the hands of his trustee and postpone the period for

its ultimate enjoyment by the beneficiaries named therein. Under the original will his grandchildren were to come into the possession of the fee upon the death of their mother. This period, in the codicil, he attempted to postpone until the death of such grandchildren, and attempted to provide that the fee should vest in his great-grandchildren without regard to whether they were the children of grandchildren who might be living at his death, or the children of grandchildren who might be born thereafter. His purpose, as clearly expressed in the codicil, was not, in any wise, to alter or change the beneficiaries as designated in his original will, but was simply to postpone the period when the fee in the property passed by his will should vest in the beneficiaries named therein.

In the original will he directed the trustee to deduct from the share of his estate going to any grandchild any sum that he had theretofore advanced to such as his books showed he had made advances to. In the codicil he, himself, disposed of the question of advancements so far as the grandchildren then living were concerned; but he did not, in any wise, deviate from his purpose in regard to advancements, as set out in his original will. When he drew the original will he had evidently made advances to at least one of his grandchildren, and perhaps two, or else was anticipating doing so. And we gather from the language of both the original will, and the codicil in question, in dealing with the question of advancements, that it was the purpose of the testator to treat all of his grandchildren alike. He was unwilling that one should have any advantage or preference over the others, and this expressed purpose on his part lends additional support to the con-

clusion which we have reached that, in using the language which he did in article 3 of the codicil, the testator was intending to include under the provisions thereof all of his daughter's children, whether born before or after his death.

Placing this interpretation upon the language used in article 3 of the codicil, we come next to a consideration of the question as to whether or not said article violates the rule against perpetuities, and is, for this reason, void. The rule against perpetuities provides against possibilities as well as realities, and where the devise is such that the fee, under its terms, may vest in one born after the death of the testator, who may live more than 21 years and 10 months thereafter, it is void because it presents the possibility of the happening of such contingency. Clearly, the case under consideration falls within the purview of this rule. Mrs. Carter, being alive at the time of the death of her father, might have had children born to her after his death, and these children may have grown to manhood and womanhood, and lived more than 21 years and 10 months after her death, the period during which the alienation may be limited, without violating the rule against perpetuities. The possibility of the happening of such contingency brings the case clearly within the inhibition of the rule and article 3 of said codicil is, therefore, absolutely void.

Ordinarily, in a case of this kind, where a devise fails and cannot be carried into effect because it violates a provision of the law the fee vests in the person or persons holding the last preceding estate, and hence the children of Mrs. Carter, living at her death, would, under the provisions of the original will of the testator, take the estate. But for appellees it is insisted with much earnestness that the codicil re-

voked that part of the original will, and that, if the codicil fails, then the property which the testator attempted to pass thereby goes as undevised estate. There would be much force in this contention if the codicil contained a revoking clause, or even if it could be said that, by implication, the testator intended by the codicil to revoke the former will; but it is now generally held that, in the absence of a revoking clause in a codicil, where the codicil is declared inoperative and void, the provisions of the original will which the testator intended the codicil to supplant remain in force.

It is true that this principle of construction is not of universal application, and some of the earlier cases in New York, Mississippi, and Georgia seem to hold a contrary view, but the later cases in New York and elsewhere hold that, in the absence of a clause in the codicil revoking the former will, a void codicil cannot operate to destroy a prior valid devise.

In the case of Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193, in overruling a former opinion of that court, in which it had held that a codicil though void repeals a conflicting clause in a former will, it was held that the proposition that a former valid will could be attacked by the execution of a void codicil is both unreasonable and illogical; that, in order to support such a contention, the appellants were required to argue that the codicil was absolutely void because against the plain provision of the law, and yet had force enough to revoke and annul, without words of revocation, a former valid instrument.

Again, the same court in the case of Altrock v. Vandenburg (Sup.) 25 N. Y. Supp. 851, held in disposing of a similar question:

"It must, of course, be conceded that, if the codicil had in terms revoked the devise contained in the will, the fact that an attempted devise of such property by the same instrument was void would not operate to restore the devise revoked. But that is not the question presented by this instrument. The codicil does not in express language revoke the devise in the will. It recites: 'Inasmuch as I devised my farm to my son, William, for the term of his natural life, with remainder over, now, instead thereof, I do devise my said farm,' etc. Now, if this attempted devise was valid, it would operate as a revocation of the will in such respect, because inconsistent with it, and expressly intended to take the place of it. But it is not valid and it would be strange, indeed, if a wholly inoperative, attempted disposition should nevertheless have the effect of destroying a prior valid devise, especially when, as in this case, it is apparent that the testator did not wish to die intestate as to his real estate, and that, if he had known that he could not lawfully make the disposition last attempted, he would have been content with the first. No authority had been brought to my notice which seems to require such a holding. On the contrary, the reasoning of Judge Finch, speaking for a unanimous court, in Austin's Case, 117 N. Y. 577, 23 N. E. 193, seems to clearly justify the conclusion that a void disposition, although inconsistent and repugnant to a prior one, does not operate to destroy it."

The principle announced in these cases from which we have quoted is sound, and, we believe, a correct enunciation of the rule. In Page on Wills, Sec. 263, it is held that, where a codicil is not so executed as to give effect to its provisions, it is treated as entirely void; that, even though it contains a clause of revoca-

tion, it is likewise void. Of course, if it is void, because not executed in the manner and form as provided by law, it could not properly have any binding effect, and could not invalidate the provision of a previous will in conflict with its terms. By analogy of reasoning if the codicil was void because violative of the plain provision of the law, we are unable to see how it could have any more effect upon the provisions of a previous valid will than it would have if void for other reasons. Being void, it is a nullity, and must be treated as though it had never been executed. Hence, the contention of appellees that the execution of this void codicil revoked the provisions of the former will in which the testator disposed of the residue of his estate cannot be accepted as sound.

Another claim which appellees urge is that the estates which passed to the grandchildren are separable, and that some of them may be valid while others may be invalid. This contention is based upon the idea that under the will of the testator all of the residuary estate passed to the five children who were living at the death of the testator; but as this contention is contrary to the interpretation which we have placed upon the codicil in question, we deem it unnecessary to enter upon an extended consideration of this claim. When it is held that by the term "grandchildren," as used in the third article of the codicil, the testator referred to all of the children of his daughter, whether born before or after his death, it becomes unnecessary to pass upon the character of estate which would have passed to the devisees had we placed a different construction upon it.

This whole question was recently considered by this court in the case of Brown v. Columbia Trust Company, 123 Ky. 775, 97 S. W. 421, 30 Ky. Law Rep. 110. In that case it appeared that Robert Wickliffe, by his last will devised an estate to his son-in-law, William Preston, to be held by him in trust for the benefit of testator's daughter, Mrs. Preston, during her natural life, and after her death to the use of any child or children or descendants of his said daughter to whom she might by last will direct, limit, or appoint said uses. Mrs. Preston had six children, all born before the death of her father, and none born after his death. Pursuant to the power conferred by the will of her father, she devised certain of the estate to her children, with the proviso that they were to hold it for and during their lives, and at the death of each it was to pass to his or her bodily heirs living at their death. After first deciding that the effect of the execution of the power of appointment by Mrs. Preston was such as to make her act the same as though it had been done by her father, the original testator, it was held that the devise was absolutely void, and that the grandchildren of Mrs. Preston, to whom she intended in the execution of the power of appointment to give the fee, had no interest whatever under the will, and that the entire estate in fee was in her children. The facts in that case are so similar to the facts in the case under consideration that it may be accepted as exercising a controlling influence in determining this case. In each case there is a devise for the benefit of a daughter during her life. In the Brown case there was a devise of the remainder after her death to her children during their respective lives. In the case under consideration, after the death of Mrs. Carter there was a devise for the

use and benefit of the children of Mrs. Carter living at her death, during their lives, with a provision in each case that the fee was ultimately to vest in the great-grandchildren of the testator. In passing upon the validity of the devise in the Brown Case, this court said: "Under this statute, and under the rule against the creation of perpetuities, the validity of any future estate depends upon the certainty of its vesting within the prescribed period, and this certainty must exist at the time of the creation of the estate. It follows that the estate will be void when this certainty does not exist at the time of its creation, although subsequent events so happen that the estate could vest after that period. It is immaterial whether Mrs. Preston had children born after her father's death. The fact remains that at his death, Mrs. Preston being alive, it is possible that she might have had children born alive thereafter who could have survived her, and who would have taken as members of the class represented by her children. Such afterborn child would therefore, have been one of the persons included in Wickliffe's devise. His daughter had the power of appointment only as among her children, failing which, her children, or as the will says, 'her heirs at law,' would take as remaindermen under the will of Wickliffe. * * * * * We conclude that the will of Mrs. Preston was valid only to the extent that it exercised the appointment allowed by her father's will; that is, in designating which of her children took, and in what proportions, after her own death. But the attempted limitations of their estate to a life estate, with remainder to their children was void. Hence, Mrs. Mary O. Brown took the fee to the property devised to her."

In that case, as in this, the children of the daughter living at her death constituted the class whose children would ultimately take the property. How many there would be in each case was not known at the date of the testator's death, nor could it be known until the death of Mrs. Preston in that case and Mrs. Carter in this case. In each case this class might have consisted either in whole or in part of children born after the testator's death; hence, a material part, if not all, of the estate might not have vested within the period allowed by the rule against perpetuities. For this reason the attempted devise over to the great-grand-children in the Brown v. Columbia Trust Company Case was held to be void, and, for a similar reason, article 3 of the codicil of the will under consideration is absolutely void, and the children of Mrs. Carter living at her death were at once, upon her death, under the will of their grandfather, vested with the fee-simple title to the estate.

Several minor questions are raised by counsel which we deem it unnecessary to pass upon. In refusing to permit the amended pleadings to be filed by the surety company, the chancellor proceeded upon the idea that Lattimore D. Carter had no interest whatever in the fund in question, and under this view of the case his ruling was correct. Of course, had he entertained views in harmony with the conclusions which we have reached, he would have permitted the pleading to be filed. A discussion of the rights of the surety company in this particular is not deemed necessary.

The chancellor in his judgment rejected two items, to-wit, one for $1,900 and another for $32 of plaintiff's claim. These claims originated in the following manner: In November, 1906, Lattimore D. Carter,

as trustee, sold to John P. Starks the old Douglas county homestead, consisting of about 40 acres, also known as ''Woodburn,'' for $42,500. Seventeen thousand five hundred dollars of this sum was paid in cash, and the purchaser executed five notes for $5,-000 each, payable on or before 10 years from date, secured by a lien on the land. Each of these notes drew 5 per cent. interest from date, payable semi-annually. In July following, said Carter sold four of these notes to the Fidelity Trust Company at par and accrued interest, but in order to make the sale he had to make said notes yield a return of 6 per cent., payable semi-annually, instead of 5 per cent. The trust company demanded of him security to carry out this agreement, and for this purpose he pledged with said trust company the remaining $5,000 note. There was realized out of the sale of the four notes the sum of $20,138.88, and to secure the additional 1 per cent. on the $20,000, face value of said notes, the said $5,000 note was pledged.

It is alleged in the pleadings that this transaction cost the estate the sum of $1,900, and that the trustee, Lattimore D. Carter should be held answerable therefor. It appears that Mrs. Sallie R. Carter, the life tenant, consented to the sale as the will required she should, before a sale was authorized. She also consented to the sale of the $5,000 notes as a whole; but it is insisted by appellee on the cross-appeal taken by it that this consent on her part to a sale of this note for the purpose of reinvestment did not carry with it the right on the part of the trustee to sell them for any other purpose, and certainly not to pledge them in order to enable him to convert the estate into cash for his own selfish ends. It is charged that, in thus pledging this remaining $5,000 note and

rendering the principle thereof liable to secure the additional interest on the other four notes for $5,000 each, the trustee was simply robbing the estate to that extent, and that he is as much answerable therefor as though he had sold the $5,000 note and converted $1,900 thereof to his own use.  The trustee was charged with the duty of preserving the estate which came to his hands, and the bond was executed for the express purpose of guaranteeing the faithful performance of this duty.  In pledging the $5,000 note with the trust company in order to enable him to convert the remaining four $5,000 notes into cash, the trustee was in fact impoverishing the estate in his hands of the additional 1 per cent. per annum, payable semiannually, which he agreed to pay to the trust company on the $20,000 worth of notes, or, expressing it differently: There came to his hands five $5,000 notes.  Leaving out of consideration for the present the question of interest, he cashed four of them, receiving therefor the face value, $20,000, with some little accrued interest.  The remaining $5,000 note he pledged with the trust company to secure a sum sufficient to make the four $5,000 notes which he sold yield to the purchaser 6 per cent. instead of 5 per cent.  It is charged that this transaction cost the estate $1,900; hence, instead of realizing $5,000 out of the fifth note, the estate can realize but $3,100 therefrom.  This was clearly a misappropriation of the funds of the estate intrusted to his care, to the extent of $1,900, and he should be held answerable therefor.  Having failed to pay same, his bond is properly chargeable therewith.

The $32 claim is for expenses incurred in making an investigation into the accounts and affairs of said

vol. 134—26

Carter as trustee, when it was discovered that he had defaulted. This item of expense, while a proper charge, perhaps, against the principal, is not such an obligation as the surety could be held answerable for, and the chancellor correctly rejected it.

For the reasons indicated, the whole court sitting, the judgment of the lower court is reversed on both the original and cross appeals, and the causes remanded for further proceeding in each case consistent herewith.

Judges Nunn and Carroll dissent, being of opinion that the testator intended to and did limit the estate to the grandchildren named in the codicil.