## United States Fidelity & Guaranty Company v. Carter, et al.

(Decided May 7, 1914.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Trustees—Action to Settle Accounts of Defaulting Trustee—Settlement Res Judicata as to Surety.—In a suit to settle the accounts of a defaulting trustee the judgment is conclusive against the surety, and in a suit on the bond, as to the surety, the settlement suit is res judicata.

2. Sureties—Party to Action to Settle Accounts of Fiduciary—When Cannot Question Judgment.—Where a surety was a party to an action to settle the accounts of a fiduciary, participated in it, objecting to the judgment and praying an appeal which it did not take, the settlement and judgment thereon are res judicata as to surety.

3. Sureties—Bound by Settlement of Fiduciary's Accounts—Cannot in Action on Bond Attack Settlement.—The law is well settled in Kentucky that the surety of a fiduciary is bound by the settlement of such fiduciary's accounts in an action instituted for that purpose, and the surety cannot in a subsequent action on the fiduciary's bond question the correctness of the judgment on the settlement.

BRUCE & BULLITT, WM. MARSHALL BULLITT and KEITH L. BULLITT for appellant.

E. W. CARTER, H. H. NETTLEROTH for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In one form or another this is the third time this case has been here, and we therefore venture the hope that this time will be the last time.

In a suit to settle the accounts of a defaulting trustee, an item of $6,089.00 was charged against him. The item was for attorney fees expended by the succeeding trustee in recovering the loss by prosecuting actions against his sureties, and otherwise. The question here is whether in a suit on the bond, the surety can attack that settlement, or the items embraced in it. That is, whether as to the surety the settlement suit is *res adjudicata*. The lower court held that it was, and rendered a judgment against the appellant, surety, for the amount its principal was owing on the settlement.

All the troubles grow out of the theft of a large part of the estate of George L. Douglas by Lattimore D. Carter, who was acting as trustee. To understand the matter at issue it is necessary to review some history.

George L. Douglas devised his large estate (realty and personalty) to his daughter, Mrs. Carter, for life, with remainder in fee to her five children (testator's grandchildren). By codicil he attempted to tie up his estate, and postpone the vesting of the fee, by devising to a trustee for the following uses: (a) Mrs. Carter for life. (b) After her death to her five children for life, and then, (c) after their death, in fee to their children (testator's great-grandchildren). This will was accepted without question by the devisees, and from time to time various trustees were appointed, and these, after settling their accounts, had, in turn, resigned. These several trustee settlements were made in the suit of John W. Barr v. Stuart R. Carter, No. 47523, pending in the Jefferson Circuit Court, and this is commonly referred to in the record of this appeal as the "settlement suit."

Lattimore D. Carter was one of Mrs. Carter's five children, and in 1902, in the settlement suit, he was appointed trustee under the Douglas will, to take the place of the trustee who had resigned, and in that suit he gave an unlimited bond with the appellant Guaranty Company as surety thereon, covenanting that:

"Lattimore D. Carter, as trustee under the will of George L. Douglas, deceased, will faithfully perform all his duties as such, and will comply with the judgment and orders of the court in the action and will account for, pay and deliver to the said parties and persons, all moneys or property due or belonging to them when required."

In 1907 Lattimore Carter absconded, and it soon developed that he had either wasted, or carried away with him, over $70,000 of the Douglas estate. The only thing he ever sent back was his resignation. The court appointed Peyton N. Clarke as trustee to succeed him. Clarke filed the present suit to recover from appellant, the surety on the bond, the amount of defalcation. Shortly after the suit was filed, the life tenant, Mrs. Carter, died. The Guaranty Company had already interposed a defense to the action upon the bond, and upon the death of Mrs. Carter tendered an amended and supplemental answer, counter-claim, etc., insisting, to use the language of appellant, that the codicil was void because in violation of the rule against perpetuities; that upon Mrs. Carter's death the entire estate had, under the original will, vested in fee simple in her five children, of whom Lattimore was one; that, consequently, one-fifth of the funds which Lattimore had appropriated was really his own property; and that the Guaranty Company should not be made to reimburse Lattimore Carter for property that he took which really belonged to himself; and for the remaining four-fifths of the defalcation, which it would have to pay, it sought recoupment by subjecting Lattimore Carter's one-fifth interest in the real estate, etc.

The Chancellor refused to permit the supplemental answer to be filed; and in November, 1908, rendered judgment against the Guaranty Company for $72,847.67 as the amount of the whole defalcation as of that date. The Guaranty Company appealed, but rather than supersede, it paid Clark, the trustee, the full amount of the judgment. Clarke took a cross appeal involving certain items which the lower court had rejected as not being covered by the bond. In U. S. F. & G. Co. v. Douglas' Trustee, 134 Ky., 374, this court reversed the judgment on both the original and cross appeals, and decided:

1. That the codicil was absolutely void because in violation of the rules against perpetuities.

2. That on Mrs. Carter's death the entire estate vested in fee simple in her five children, of whom Lattimore Carter was one.

3. That the Guaranty Company should have been permitted to file its amended and supplemental answer, setting up its contention; and also that certain items involved on the cross appeal were covered by the bond,

and were a part of the defalcation, bringing the amount to $75,000.

On a return of the case the lower court adjudged a restoration to the Guaranty Company of one-fifth of the gross sum which it had paid into court in lieu of superseding the former judgment, but in view of the fact that a final settlement of Lattimore D. Carter's account as trustee of the Douglas estate might show that his gross one-fifth of the amount paid into court was in excess of the sum to which Lattimore Carter would be entitled from the whole estate, the following provision was inserted in the judgment:

"And it appearing that issues have not yet been joined upon said amended and supplemental answers, counter-claims and cross-petitions filed herein by said defendant, the United States Fidelity and Guaranty Company, and that it would be premature at this time to attempt herein to determine the amount of the interest or share of said Lattimore D. Carter in said total shortage or in the estate of George L. Douglas, deceased, it is therefore ordered that this cause be retained for such further proceedings as may be necessary or proper to determine the rights of all parties herein arising under said amended and supplemental answers, counter-claims and cross-petitions; *and it is further expressly provided that nothing herein shall prejudice or affect the rights of said plaintiff trustee or of the beneficiaries under said will of George L. Douglas, deceased, to charge against the interest or share of said Lattimore D. Carter in said estate or against the sum herein ordered repaid unto the United States Fidelity and Guaranty Company all costs, disbursements and expenses properly incurred in ascertaining, establishing, recovering and settling the amount of said trustee's shortage or defalcation, and also all costs and expenses of administration of said trust and the settlement thereof.*

"This cause is now retained for such further orders, judgments, and proceedings as may be necessary or proper."

The Guaranty Company objected to the entry of this judgment, and particularly to the provisions just quoted from it, upon the idea that the amount of the defalcation had been fixed in a former judgment, and that the court of appeals had decided it was only liable for four-fifths of it, and having paid same, it was, in effect, exonerated, and fully discharged. The Guaranty Com-

pany thereupon sued out a writ of mandamus to compel the lower court to enter a judgment conforming to the opinion of this court in the Douglas case, *supra*. In U. S. F. & G. Co. v. Miller, 124 S. W., 341, this court, in an elaborate opinion, denied appellant's application for the mandamus, and concluded as follows:

"In our opinion the judgment entered by the Chancellor conformed to the opinion of this court and its mandate."

It might be noted here that under the judgment of the lower court, above referred to, the Guaranty Company was expressly subrogated to all the rights and interest of Lattimore Carter in the estate of George L. Douglas, pursuant to section 466 of the Kentucky Statutes. The Guaranty Company's supplemental answer showed that Lattimore Carter's interest in the Douglas real estate amounted to $25,000. How much the Guaranty Company has been able to realize out of it does not appear.

The settlement suit was then referred to the master commissioner, and the parties in interest, including the Guaranty Company, proceeded to have a final settlement of the defaulting trustee's accounts, and to determine for the purpose of distribution the exact amount due, and on hand, for the several devisees. The commissioner reported that, on the date of his report, the personal estate, with interest, had there been no defalcation, would have amounted to $85,594, but that same had been reduced to the extent of $7,150, which the trustee had been compelled to pay out as attorney fees in protecting the estate, and securing recoupment of Lattimore Carter's shortage. The trustee had also restored to the Guaranty Company $16,136, being the amount of L. D. Carter's one-fifth share, plus the interest, and this left on hand for distribution $62,697. The item of $7,-150 was then charged to L. D. Carter as waste, but it is agreed that this item of waste should be, and was in the report, credited with several sums, so that it appears that the difference in the amount the other four devisees should have received, in the aggregate, from what they did receive, as shown by the report, is $6,089.75, and this item is the matter of dispute on this appeal.

The Carter children claim that L. D. Carter owes them that sum as trustee, and that it was so adjudged by the court confirming the commissioner's report. The Guaranty Company agrees to that proposition, but claims

that the judgment is merely one as between Carter, who had defaulted, and these children, and insists that the court neither attempted nor intended to adjudge that the Guaranty Company should pay the children or trustee such sum. It is conceded that as between Lattimore Carter, and his brothers and sisters, he is not entitled to anything out of the estate until his defalcation has been made good, and until they have received as much from it as he has. The Carters contend that since the Guaranty Company is subrogated to the rights of Lattimore Carter, it stands in his place and is not entitled to recoupment until the children have been equalized. In answer to this the Guaranty Company says that in withdrawing the $16,000 from the trustee when the case went back after the first appeal, it was merely withdrawing its own money, and not that of Lattimore D. Carter. In other words, it had paid under an erroneous judgment that much more than it should have paid. It should be remembered, however, that at the time Lattimore Carter defaulted, and when the suit was brought, his mother, the life tenant, was still alive, and the estate therefore was not divisible because it had not come into the possession of the remaindermen; therefore his defalcation was of a trust fund belonging to the whole estate, and not merely of an undivided four-fifths. The life tenant dying in the meantime, the right of his surety to offset the defalcation with his undivided one-fifth interest in the estate, is recognized in the first appeal *supra.* The surety, although sustaining a heavy loss, has thus been relieved of paying one-fifth of its total obligation, and has also recovered something on Lattimore Carter's interest in his grandfather's estate, which it alleged was worth $25,000. All these matters are mentioned here to show how intricate and complicated the affairs of the estate have become.

However, in view of the conclusion we have arrived at, it is unnecessary to deal further with them more than to say that for the purposes of this case we may concede that, in the first instance, attorney fees are not covered by the bond, although the charge may be valid against the principal. This statement is supported by ample authority. 11 Cyc. 24-104; 32 Cyc. 120; National Surety Co. v. Alterburn, 110 Ky., 832. But in this case the Guaranty Company was not only notified by the master commissioner, but appeared by attorney, and took part in the settlement, which was subsequently reported

to the court. When same was reported, it filed objections to the items in question. When these exceptions were overruled, it prayed an appeal to this court, and although more than two years elapsed no appeal was ever taken.

The Guaranty Company was not only a party, but a privy to the action, and under section 734 of the Code, it unmistakably had the right of appeal, and it seems to us that the sole question for determination is whether the judgment of the lower court on that settlement and the Guaranty Company's failure to take the appeal has precluded it from questioning the validity of the charge in a collateral suit. The Guaranty Company admits that the report and judgment is *res adjudicata,* but insists that it is so, merely between Lattimore Carter, the principal, and the other devisees, for it says the report makes no mention of the Guaranty Company except to recite that its exceptions to the report are overruled, and grants to it the usual exceptions and appeal, but it says that the commissioner's report did not purport in any degree to fix any liability on the Guaranty Company. Failing to appeal, and two years having elapsed, the Carters then bring a direct action against the Guaranty Company to recover of it on the bond the amount fixed in the commissioner's report, and adjudged in the settlement suit as being due them from Lattimore Carter on account of the trusteeship.

The Guaranty Company resisted the payment, claiming that it is merely an indirect attempt to make them pay the trustee's attorney fees in collecting the bond, and that it is no more liable to pay the adverse parties attorney fees than is any other litigant required to pay attorney fees, except the statutory fees adjudged against unsuccessful parties. The Guaranty Company admits that the provisions of its bond are sufficiently broad to cover any waste committed by the trustee, but claims that the commissioner cannot make a thing waste by naming it so, and in that way render the surety responsible for it. It argues, and correctly so, that it is not a waste, for waste consists in the misappropriation by the trustee of property itself, and by no construction can waste be considered so as to include attorney fees incurred by another long after the trustee ceased to have any control over the property or estate. But the difficulty with appellant's position is that under whatever name designated, or for whatever purpose the expense

was incurred, the commissioner did find that on account of this trusteeship, and on a settlement of it, the trustee was indebted to these devisees in the sum stated. Appellant was a party to the settlement, participated in it, objecting to the finding and to the judgment rendered on it, and prayed an appeal which it never took. It seems to us appellant is now too late in questioning the charge.

The law is well settled in Kentucky that the surety of a fiduciary is bound by the settlement of such fiduciary's accounts in an action instituted for that purpose, and the surety cannot in a subsequent action on the fiduciary's bond question the correctness of the judgment on the settlement. Clark v. Newman's Admr., 20 K. L. R., 1339, a surety sought to defend on the ground that the administrator did not, in fact, receive the amounts with which she was charged in the settlement, but this court said:

"The appellant was a party to the suit in which the accounts of the administratrix were settled. He was not only a party to that suit, but it would appear that he really knew as much about the business as Mrs. Clark did. He was her son-in-law and her attorney. Under the decision in Hobbs v. Middleton, 1 J. J. Marshall, 176, he is bound by that judgment."

McCalla's Admr. v. Patterson, 18 B. Monroe, 208, was a suit against an administrator and his sureties upon his official bond, for a devastavit. The first paragraph of the sureties' answer sought to go behind the decree against the administrator. This court ruled out the defense, saying:

"The responsibility of the sureties in the administrator's bond is incidental and collateral to that of the principal, and a judgment in favor of a creditor against the administrator concludes the sureties as to the existence and character of the debt thus ascertained, and can not be questioned or reviewed in a suit on the administrator's bond."

To the same effect is the National Surety Co. v. Alterburn, 110 Ky., 836, where it was sought to recover of an assignee on his bond the amount which it had been previously ascertained on settlement had gone into his hands, and also an additional sum expended by way of attorney fees in making the recovery. The assignee undertook to show that the settlement was erroneous, that, in fact, no such sum had come into his hands. This court

while denying his right to recover the attorney fees (these were not embraced in the settlement) did hold that an assignee's bond is analogous to that assumed by the surety of the fiduciary, and that a judgment obtained in the settlement suit against the principal is conclusive upon the surety, and the question cannot be reopened in a suit upon the bond.

Hindman, &c. v. Lewman, &c., 23 K. L. R., 181, was another suit upon the bond of assignee, and the court used this language:

"The action in which the judgment was rendered was, in part, for the purpose of ascertaining the amount of defalcation of Sullivan, assignee, and for which the appellees were liable. Whether the sureties were parties to the action or not they are bound by the judgment of the court in fixing the amount of the liability of the assignee. (National Surety Co. v. C. C. Alterburn, and cases therein cited)."

This doctrine is in harmony with that prevailing in nearly all other jurisdictions. 21 Cyc. 239, says:

"In the absence of fraud or mistake a final judicial settlement by a guardian is in most states conclusive on the sureties as to the existence and amount of the guardian's liability to the ward, even where the sureties were not made parties to the proceeding or notified thereof. A final settlement is also conclusive in favor of the sureties as to all matters embraced in the adjudication, in the absence of fraud."

Illustrating this rule is the case of Cross v. White (80 Minn., 413), 81 Am. S. Rep. 267. On final settlement of the guardian's account he was adjudged indebted to his ward in a stated sum, and the court in deciding the case said:

"The only question in the case is whether the order and determination of the probate court is final and conclusive against the sureties on the guardian's bond. The question came before this court in Jacobson v. Anderson, 72 Minn., 426, 76 N. W., 607, and such determination was there held conclusive. The decision is in line with the trend of authorities generally, and no reason occurs to us why we should depart from it."

We are of opinion that the settlement of the trustee's accounts is conclusive against the surety, and they having failed to take an appeal, that settlement, and the judgment thereon is *res adjudicata* as to the surety.

The judgment is therefore affirmed.