## Riedlin's Guardian, et al. v. Cobb, et al.

(Decided January 20, 1928.)

### Appeal from Kenton Circuit Court.

1.   Trusts.—A trust may be revoked at any time by the consent of all the interested parties.

2.   Guardian and Ward.—Where a guardian of infants sought the cancellation of a trust, which cancellation was obviously for the benefit of his wards, held that, because of Ky. Stats., secs. 2031, 2032, 2039, an infant's guardian has the right to give his binding consent, for the wards, to the cancellation of a trust of personal property, when approved by the chancellor.

GALVIN & TRACY for appellants.

RODNEY G. BRYSON and S. D. ROUSE for appellees.

Opinion of the Court by Judge Dietzman—Affirming.

In February, 1919, Wm. Riedlin, Sr., died testate. By his will, he divided his property into four shares and left one share to each of his three children who were then living, Maria Cobb, Lucia Schopp, and Wm. Riedlin, Jr., and the remaining share to his grandchildren, Walter Riedlin, Jr., and Rosemary Riedlin, they being children of a deceased child of the testator and infants. Wm. Riedlin, Jr., died in March, 1919, leaving a will executed but a few days prior to his death, and by which he devised all his property to his widow, who is now Lena Hoffman Riedlin Seiler. The major portion of the estate of Wm. Riedlin, Jr., was that which he had inherited from his father. This portion of the estate consisted in large part of stock in a beverage concern owned by Wm. Riedlin, Sr., at the time of his death. The surviving sisters of Wm. Riedlin, Jr., and the guardian of Walter Riedlin, Jr., and Rosemary Riedlin threatened a contest of the will of Wm. Riedlin, Jr. A compromise was effected between the parties whereby the stock of the beverage concern was put in trust. By the terms of the trust all the dividends accruing from profits made by the beverage concern after the date of the deed of trust were to be paid to the widow of Wm. Riedlin, Jr., as long as she lived. Any dividends declared out of profits earned prior to the deed of trust were to be added to the corpus of the estate, the income thereof to be paid to the widow of Wm. Riedlin, Jr., as long as she lived. On her death the corpus of the estate was to be divided into thirds, one-third to be turned over to Maria Cobb, one-third to Lucia Schopp, and one-third to Walter Riedlin and Rosemary Riedlin jointly.

Later on the beverage concern was liquidated and the corpus of the estate was changed from stock in the beverage concern to Liberty bonds. The corpus of the estate now amounts to $424,500. Wm. Riedlin's widow, now a woman of 31 years of age and in excellent health, has remarried. By agreement between her, the trustee of the trust, and the beneficiaries of the trust, Maria Cobb and Lucia Schopp, and the Covington Trust & Banking Company, the guardian of the infant beneficiaries, Rosemary Riedlin and Walter Riedlin, it was agreed that the trust should be abrogated and one half of the trust estate paid over absolutely to Mrs. Seiler and the

other half divided by giving one-third thereof to Maria Cobb, another one-third to Lucia Schopp, and one-third to the estate of the infant beneficiaries. This suit was then brought under the Declaratory Judgment Act (Acts 1922, c. 83) to ascertain whether or not this agreement was valid. The lower court so adjudged, and this appeal is prosecuted to determine the correctness of that judgment.

So far as the facts of the case are concerned, it is of undoubted advantage to these infant beneficiaries that the trust in question should be set aside and the agreement carried out. The corpus of the trust is in Liberty bonds of the present par value of $424,500. The income of the investment is slightly less than 4 per cent. Should the life tenant live out her expectancy of 29.83 years, the amount coming to the infants, who would then be 47 and 44 years of age, respectively, would be $141,500. Under this agreement if they put the amount coming to them, which is $70,750, out at interest so as to yield 4 per cent. on both principal and interest, the same would, at the end of the expectancy of the present life tenant, amount to $229,672. The value, under the life tables, of the present life tenant's interest in the trust estate is between 60 and 70 per cent. of the estate according as the interest is figured at 4, 5, or 6 per cent. Under the proposed cancellation agreement, she gets but 50 per cent. of the estate. Further, it is to the advantage of these infants that they should have the present use of the income for their education and the other necessities of their maintenance. It follows that really the only question we have to determine is power of the parties to the trust agreement to set it aside, for if they have such power the exercise of it in this case is very wise. In the case of Fidelity & Columbia Trust Co. v. Gwynn, 206 Ky. 823, 268 S. W. 537, 38 A. L. R. 937, we said:

"There seems to be a generally recognized principle that a trust may be revoked at any time by the consent of all the interested parties, and the 'interested parties' seem to have been held to be the settlor and the cestuis que trustent."

Although some of the older cases, as the opinion in the Gwynn case pointed out, declined to allow one who was both settlor and cestui que trustent, to cancel the trust, such declination rested on the particular facts of

those cases. As the Gwynn case intimated, had it been for the best interest of the settlor, who was also the cestui que trustent, to have canceled the trust, such cancellation would probably have been had. It was had in the Gwynn case. See, also, Perry on Trusts (6th Ed.) sections 104 and 920.

There would be no question, then, in this case of the power of the parties to set aside the trust agreement as proposed except for the fact that one of the settlors was the then guardian of the infant beneficiaries, and the successor in office of such guardian is the one which now consents for its wards to the proposed cancellation of the trust agreement. May it do so? By section 2031 of the Statutes, a guardian has the power to sell any of the personal estate of his ward. By section 2032 of the Statutes, a guardian is invested with the possession, care, and management of the ward's estate, real and personal. By section 2039, courts of chancery may control the management by the guardian of the ward's estate. The trust estate here in question is a trust estate in personal property. The guardian, then, has the right to its control and management, and especially so where he has the advice of the chancellor in that regard. Under these sections of the Statutes, the guardian undoubtedly has the power to consent for his wards to a cancellation of a trust in personalty where such cancellation is for the best interest of the ward, and where, as here, the advice of the chancellor is sought in that connection and the chancellor concurs in the action of the guardian. It is but the exercise of his right to the care and management of his ward's estate and comes within the purview of his right to sell the personalty of his ward. In the case of Maclay v. Equitable Life Assurance Society, 152 U. S. 499, 14 S. Ct. 678, 38 L. Ed. 528, the facts were that a Mrs. Snowden took out a policy of insurance on the life of her husband, payable to their children if she did not survive her husband. She died before he died, and he qualified as the guardian of their children. He then elected for his wards to take the surrender value of the life insurance policy. It was paid to him. After his death, his successor in office as guardian sued the insurance company for the full amount of the policy, and the question involved was whether Mr. Snowden, as guardian, had the right to elect to take the surrender value

of the policy as he had. The court held that he had such power, saying:

"A guardian, unless his powers in this respect are restricted by statute, is authorized, by virtue of his office, and without any order of court, to sell his ward's personal property and reinvest the proceeds, and to collect or compromise and release debts due to the ward, subject to the liability to be called to account in the proper court if he has acted without due regard to the ward's interest. . . . However that may be, the guardian was certainly authorized to collect for the benefit of his ward any amount due under the policy, and had the right and the duty to elect, either to keep it in force by paying the premiums, or to surrender it in consideration of being paid at once its surrender value, whichever appeared to be most beneficial to the ward."

The principle on which this Maclay case is rested gives the guardian in the case before us the right to consent for his wards to the proposed cancellation agreement. It is for the interest of his wards that the trust be canceled on the proposed terms. The chancellor has approved the action of the guardian in assenting to the proposed agreement. It is a trust in personalty. The guardian has the right to the control, management, and sale of the personalty of his ward. Under such circumstances and with such power, the guardian has the right to assent to the proposed cancellation.

It follows that the judgment of the lower court approving and upholding the cancellation of the trust in question on the proposed terms is correct, and it is affirmed.