## Fidelity & Columbia Trust Co. v. Williams et al.

(Decided May 18, 1937.)

ALLEN & CLARKE for appellant.

HUBERT T. WILLIS and CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On August 10, 1927, Marie T. Williams and the Fidelity & Columbia Trust Company, trustee, entered into a trust agreement by which she placed in its hands $20,000 in trust to invest in such securities as were eligible for trust investments under the laws of Kentucky with power of sale and reinvestment. The material provisions of the trust agreement are as follows:

"(c) The Trustee shall pay to the Donor for her life, the entire net income from the trust estate and upon the death of the Donor, the principal of the trust estate shall pass in fee to Wistar Morris Williams, step-son of the Donor; provided however, that should the Donor die before Wistar Morris Williams attains the age of twenty-one (21) years, the said Wistar Morris Williams shall receive only the income from the said trust estate until he attains said age, at which time he shall receive the principal thereof. In the event Wistar Morris Williams should predecease the Donor, the principal of the trust estate shall, on the death of the Donor, pass in accordance with the provisions of her last will; and in the event Wistar Morris Williams should predecease the Donor, and the Donor should thereafter die without leaving a will, the principal of the trust estate shall pass in fee to the heirs at law of the Donor. * * *"

"(e) If, during the continuance of the trust estate herein created, the Trustee should deem it necessary or advisable to advance to the Donor, or, after the death of the Donor, to Wistar Morris Williams, any portion of the principal of this trust fund, the Trustee is hereby empowered to make such advancement or advancements to the Donor or to Wistar Morris Williams as often as it may see fit to do so and for any purpose or purposes which the Trustee may in its discretion determine."

On April 28, 1936, Wistar Morris Williams, one of the beneficiaries of the trust, executed a deed of assignment whereby he transferred to Marie T. Williams, the settlor, all of his right, title, and interest to the said trust fund created by the trust agreement of August 10, 1927. The settlor's stepson, Wistar Morris Williams, was about thirteen years old at the time of the creation of the trust, and about twenty-two years old at the time of the assignment of his interest to the set-

tlor. The settlor is a widow, and has never had a child of her own.

This action was brought by the settlor and Wistar Morris Williams against the Fidelity & Columbia Trust Company, trustee, to obtain a decree terminating the trust. The trustee filed an answer putting the settlor on proof. In granting the relief prayed, the chancellor held (1) that the purpose of the trust was to protect the settlor's stepson during his minority, and the purpose had been accomplished; (2) that it was to the interest of the settlor that the trust be terminated; and (3) that the settlor's heirs took no interest under the trust agreement, and that by virtue of the assignment from her stepson she had become the sole beneficiary of the trust. The trustee has appealed for the sole purpose of discharging its duty to protect all the beneficiaries of the trust, including the settlor herself.

As pointed out in the able briefs of counsel, it is essential to the termination of a trust agreement, where no power of revocation is reserved, and no fraud or mistake is involved, that the whole object of the trust shall have been accomplished, that the termination of the trust will be advantageous to the beneficiaries, and that all the interested parties consent. Anderson v. Kemper, 116 Ky. 339, 76 S. W. 122, 25 Ky. Law Rep. 538; Beard v. Beard, 173 Ky. 131, 190 S. W. 703, Ann. Cas. 1918C, 832; Haldeman's Trustee v. Haldeman, 239 Ky. 717, 40 S. W. (2d) 348; Riedlin's Guardian v. Cobb, 222 Ky. 654, 1 S. W. (2d) 1071. It is conceded that the evidence was sufficient to show that the object of the trust had been fully accomplished, and that the termination of the trust would be to the best advantage of Marie T. Williams as sole beneficiary, but the judgment is challenged on the ground that it is not clear that all the beneficiaries of the trust have consented to its termination. The question turns on whether the settlor's heirs take under the trust instrument. If they do, their consent is lacking. If they do not, their consent is not required. In the discussion of the question Anderson v. Kemper, supra, Frank Fehr Brewing Co. v. Johnston, 97 S. W. 1107, 30 Ky. Law Rep. 211, and Fidelity & Columbia Trust Company v. Gwynn, 206 Ky. 823, 268 S. W. 537, 38 A. L. R. 937, have been ably analyzed. It is pointed out that in the first two cases, in each of which the settlor of the trust reserved to himself a life

estate, and provided that upon his death the property should go to his heirs, it was held that the heirs of the settlor were beneficiaries of the trust, and the terms of the trust could not be changed or the trust itself terminated without their consent. It is also pointed out that in the Gwynn Case, where the language of the trust is substantially the same, it was held without discussion that the settlor was the sole beneficiary, and the trust was terminated on the ground that the cause prompting the creation of the trust had ceased to exist. It is not easy to distinguish the cases. In the Anderson Case the question of reversion was not considered, and the court seems to have assumed that the intention of the settlor was to create a life estate in himself with remainder to his heirs. In the Frank Fehr Brewing Company Case the court did discuss the question of reversion, but concluded from the whole instrument that the word "heirs" was used in the sense of children, and the settlor intended that the heirs should take as remaindermen. After all, the doctrine of reversion is controlling. A reversion is defined as the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. It is also described as "the returning of land to the grantor, or his heirs, after the grant is over." 2 Blackstone, 175; 23 R. C. L. 1100. In illustration of reversions, it is said by Coke, "If a man seized of lands in fee make a feoffment in fee (and depart with his whole estate), and limit the use to his daughter for life, and after her decease to the use of his son in tail, and after to the use of the right heirs of the feoffor; in this case, albeit he departed with the whole fee-simple by the feoffment, and limited no use to himself, yet hath he a reversion." He also adds: "If the limitation had been to the use of himself for life, and after to the use of another in tail, and after to the use of his own right heirs, the reversion of the fee had been in him, because the use of the fee continued over in him." In the case of Alexander v. de Kermel, 81 Ky. 345, 5 Ky. Law Rep. 382, Thomas Bullitt Alexander conveyed a lot and warehouse to one Wilson in trust for his own use during life, and to his issue, if any, in fee; if none, then in equal parts to two half-brothers, or the survivor, or to the issue of either, and "if both of them should die before the party of the first part without issue, said property shall go to the heirs of the said party of the first

part.'' The half-brothers died without issue before Thomas Bullitt Alexander, who, after their death, he having no issue, devised the property to Mrs. de Kermel. After quoting with approval the foregoing statements of Coke, the court held that the common-law doctrine of reversions prevailed in Kentucky; that the reversion was in the grantor, and he having survived all the remaindermen, had the right to devise the property and pass a good title to Mrs. de Kermel. In the more recent case of Mayes v. Kuykendall (Ky.) 112 S. W. 673, it was held that a conveyance by a husband to his wife for life, or in case she become a widow, during her widowhood, and thereafter to the lawful heirs of the grantor, vests in the wife an estate for life or during widowhood, with reversion to the husband. It was also held that the common-law rule that, where one conveys a life estate to another with remainder to the heirs of the grantor, they take as reversioners, and the grantor being himself the reversioner, after making such limitation may grant the reversion, is not affected by Kentucky Statues, sec. 2345, as the heirs therein referred to are the heirs of the grantee and not those of the grantor. To the same effect is Pryor v. Castleman, 7 S. W. 892, 9 Ky. Law Rep. 967; Whayne v. Davis, 66 S. W. 827, 23 Ky. Law Rep. 2174; Coomes v. Frey, 141 Ky. 740, 133 S. W. 758, and McIlvaine v. Robson, 161 Ky. 616, 620, 171 S. W. 413. In view of these decisions, there is no escape from the conclusion that the case under consideration is one where the heirs of the settlor do not take as purchasers; but the law places the reversion in the settlor; and since the only other beneficiary has transferred his interest to the settlor, she is now sole beneficiary of the trust. It follows that all the elements necessary to a termination of the trust are present, and that the decree of the chancellor was proper.

Judgment affirmed.