FIRST NAT. BANK & TRUST CO. OF
LEXINGTON  et al. v. PURCELL
et al.

Court of Appeals of Kentucky.

Dec. 14, 1951.

McDonald & McDonald, Lexington, Bradley & Bradley, Georgetown, M. Don Forman, Strother Kiser, Lexington, for appellant.

William B. Gess, Thomas B. Satterwhite, Jack F. Mattingly, and Stoll, Keenon & Park, all of Lexington, Bullitt, Dawson & Tarrant, Louisville, William S. Black, Lexington, for appellee.

WADDILL, Commissioner.

This is an action by the administrator of the estate of J. D. Purcell, seeking a declaration of rights and a construction of the will of the decedent. The parties to the suit include the devisees under the will, the beneficiaries under certain insurance policies and other interested parties.

The solution of the legal problems in this case depends primarily upon the interpretation of three documents executed on six insurance policies procured by Purcell in the name of some of his children and grandchildren.

In 1937, Purcell was issued six 20-year endowment policies by the Sun Life Assurance Company of Canada. Five were valued at $50,000 each and the sixth at $47,000. Four were issued on the lives of certain named grandchildren, one on the life of a daughter and one on the life of his daughter-in-law. Purcell was listed as the owner of all and the beneficiary of five, with a daughter, Mrs. Wiedeman, being the beneficiary of the one on her life.

In April, 1937, less than two months after the issuance of the policies, Purcell executed a series of three documents concerning the policies. The first, dated April 6, and entitled "Request for Change" was executed on all policies except the one on Mary Purcell Wiedeman.

The pertinent part of the first document is as follows:

"I, Jefferson D. Purcell, the owner of policy No. ——, issued by you on the life of ——, do hereby request that this policy should be endorsed as follows:

"Should this policy become a claim either by the death of the assured or by its maturity as an endowment, the proceeds thereof shall be divided into three equal shares."

At the end of the document the following appeared: "All prior designations, if any, of payees or contingent payees and all prior selections of any alternative method of settlement are hereby revoked."

The document set up a plan whereby the proceeds of the policies were to be dis-

tributed. In effect, a life estate was given to the three children of Purcell, with a succeeding life estate in six named grandchildren of Purcell, and a fee over to the issue of the six named grandchildren of Purcell with an alternative provision that upon the death of the survivor of the six named grandchildren, with no issue alive, the proceeds were to go to the estate of that last survivor.

On April 7, Purcell executed a "Request for Revocation of Beneficiary Privilege." In essence this document revoked his right as owner to change the beneficiary of any of the said policies, which right had been reserved to him in the original policies.

On April 8, he executed the third document, called "Assignment," and which reads as follows: "In consideration of natural love and affection I hereby assign, transfer and set over all my right, title, interest and all legal incidents of my ownership in and to policy No. —— * * * to my children * * *."

The three documents were delivered to the local agent of the insurance company on the same day, April 8. They were received at the home office on April 20. "The Request for Change" and the "Request for Revocation of Beneficiary Privilege," were endorsed on the policies; the three documents were then attached to the policies, all of which were returned to Purcell and held by him until his death.

The policies contained a provision that any written assignment of the proceeds of the policy should become effective when filed at the home office. They also contained a clause that any change of beneficiary would take effect only after endorsement of such change on the policy by the company, but "when so endorsed it will relate back to and take effect as of the date of the execution of such request. * *."

On March 2, 1942, Purcell took out a seventh policy, valued at $38,000 on the life of his granddaughter, Mary Purcell Wiedeman, Jr., who was named as owner and beneficiary of this 15-year endowment. In January, 1942, Purcell allowed the policy on the life of his daughter-in-law to lapse. According to its terms it automatically became term insurance in the amount of $50,000 expiring August 22, 1954. Payments of premiums on the policies in force were made by Purcell until his death in June, 1943.

Purcell died testate, leaving as survivors two daughters, Mrs. Mary Purcell Wiedeman and Mrs. Pauline Purcell Skillman; a daughter-in-law, Mrs. Margaret McCrystal Purcell, and six grandchildren. His will devised the bulk of his estate in trust with instructions to pay the income to his three children in equal shares. The will also gave certain directions in regard to the insurance policies.

Pertinent parts of the will are as follows: "(2) The trust herein provided shall continue until April 1, 1957 and during said period the net income derived from said trust estate shall be paid to my children or to the issue of my deceased children * *. (3) Upon April 1, 1957 the trust herein provided shall cease and the trust estate shall be distributed in equal shares unto the trustor's children or the decendents of the trustor's children * * *."

It was also provided that the executrix should have the power to prepay all premiums due or to become due on the insurance policies in effect at the testator's death. The will also stated, "If she is able to get the insurance companies to accept the full payment of the premiums upon all such policies, she may pay them and in that event it will be unnecessary to establish the trust mentioned herein * * *." It was directed that if the premiums were not prepaid, the trustee should keep the policies in full force and effect. After the policies were in effect for ten years his advisory committee had the privilege of changing the policies into "paid up" endowment insurance.

The insurance company refused to accept prepayment of the policies and Mrs. Skillman, as executrix, and Mrs. Wiedeman, as advisory committee, recommended that the policies be converted into "paid up" endowment.

The court decided that the "Request for Change" effectively changed the beneficiaries; that the distribution therein pro-

vided did not violate the rule against perpetuities; that the residue of the estate be held in trust until April 1, 1957; that the administrator should pay the premiums on the policies, and the advisory committee was held to have no right over the insurance policies.

Although there are numerous points raised by the parties, we deem it necessary to discuss only three: (1) What was the effect of the three documents? (2) Did the distribution plan violate the rule against perpetuities? (3) Should premium payments be continued from the trust income?

■ Appellants urge that the "Request for Change" was ineffective as a change of beneficiary and that the assignment should be given effect. It is true that the word "beneficiary" does not appear anywhere in the document. However, it is the opinion of the court that the clear intent of Purcell, as derived from a reading of the whole instrument, was to change the beneficiary, even though precise language is absent. We further find that the change was absolute and took effect immediately.

■ Appellants further urge that the method used to change the beneficiary did not comply with the terms of the policy. In 29 Am.Jur., Insurance, section 1320, page 989, it is written: "By the great weight of authority, a change of beneficiary can be accomplished without a strict or complete compliance with the conditions of the policy regarding the endorsement of the insurer." Kentucky is a substantial compliance state. Parks' Ex'r v. Parks, 288 Ky. 435, 156 S.W.2d 480. It is clear that there was a substantial compliance in this case.

■ By the terms of the policy an assignment takes effect when filed with the company, and after such assignment, there can be no change of beneficiary to the detriment of the assignee. Appellants claim that since the assignment and the "Request for Change" were received by the company on the same day, the assignment took effect immediately and the subsequent approval of the "Request for Change" was ineffective because, by its terms, it would be a detriment to the assignees. This argument is fallacious, in that it recognizes only part of the contract—that concerning the effective date of the assignment—and ignores the provision that the change of beneficiary shall "relate back." Under this latter clause we find that the change of beneficiary became effective April 6, and the assignment, April 8.

Apparently the three documents were executed by Purcell in order to set up a plan whereby the donees under the "Request for Change" could escape payment of the federal estate tax.

■ Appellants next urge that the plan of distribution provided for in the insurance contract is in violation of the rule against perpetuities. The subject matter of the gift is the proceeds of several insurance policies, which is personal property. In Kentucky the rule applies to both realty and personalty. U. S. Fidelity & Guaranty Co. v. Douglas' Trustee, 134 Ky. 374, 120 S.W. 328; Ford v. Yost, 299 Ky. 682, 186 S.W.2d 896, 162 A.L.R. 149. But in 41 Am.Jur., Perpetuities and Restraints on Alienation, section 35, page 78, it is stated: "The rule against perpetuities concerns rights of property only, and does not affect the making of contracts which do not create rights of property, and, therefore, has no relation to the duration of contracts. * * * If a contract creates an interest in property which equity can enforce, then the rule against perpetuities applies."

■■ Even though the contract here is one which cannot be enforced in equity, which is the test for the applicability of the rule, the transfer of the contract rights requires us to apply the rule. Gray, The Rule Against Perpetuities, section 329, page 360, explains it this way: "The Rule against Perpetuities concerns rights of property only, and does not affect the making of contracts which do not create rights of property." But in footnote No. 1, page 360, it is stated: "Although the Rule does not affect the creation of such a contract, it does apply to a transfer of the contract when created. Thus, if the promisee in such a contract should bequeath it to A. on a remote contingency, the bequest would be

void. The creation of an obligation is no part of the law of property; but the transfer of such obligation when created is as much part of the law of property as the transfer of a house or of a table." See also, Simes, Law of Future Interests, section 513.

The gift does not violate the familiar period of time of the rule, which is expressed by KRS 381.220 in these words, "lives in being * * * and twenty-one years". Under the rule an estate must vest within lives in being and twenty-one years. Simply stated, this means that the estate must vest in the grantee before twenty-one years after the death of the measuring lives.

It is fundamental that "The contingency may be postponed for any number of lives, provided they are all in being when the contingent interest is created; * * *." Gray, section 216. Purcell set up a life estate in his three children and a life estate in remainder to six of his grandchildren. He did not set up the latter as a class gift, but a gift to six named people. The fact that they were his grandchildren is unimportant. Thus, at the time of the creation of the instrument, the six were all in being and were the "lives in being" to be used as measuring the length of the estate. The use of six people as measuring lives is one which at common law was valid and remains so today. Gray, section 218.

Under KRS 381.220 the estate must vest completely within twenty-one years after the death of the last survivor of the six. After the death of the last member of the group constituting the measuring lives, there could be no more issue born to any of them. Under this alternative, the estate would vest at the death of the last member of the lives in being. Furthermore, if any of the six had issue it would vest in them. If no issue were alive, it would go to the estate of the last survivor of the six. This possibility would also be determined at death. Thus it appears that from either aspect, the estate would vest within the statutory period.

Under the law of trusts, there are several ways in which a trust may be terminated: by agreement of all parties in interest; by consent of beneficiaries upon any judicial action where the instrument creating it does not in express terms or by necessary implication prohibit the termination thereof; and if the beneficiaries consent, so long as the object or plan of the trust is not defeated, or the trust res is not diverted from the essential purpose of the trust. 54 Am.Jur., Trusts, sections 74 to 78; Fidelity & Columbia Trust Co. v. Williams, 268 Ky. 671, 105 S.W.2d 814. The intention of the creator as expressed in the instrument is the primary guide of this court in its interpretation and the compulsory control of its enforcement. New York Life Insurance Co. v. Conrad, 269 Ky. 359, 107 S.W.2d 248.

It is apparent in this case that by the express terms of the will, the trust set up "shall continue until April 1, 1957." Also, by the express terms of the trust, there was only one way in which the trust would not be established and that is if the insurance company accepted full prepayment, which it did not.

The trust must be continued, as the chancellor directed, because its purpose clearly has not yet been accomplished, and will not be accomplished until the insurance policies are fully paid. The insurance protection desired by Purcell for his family can only be achieved by the payment of premiums for the full term of the endowment policies. These policies were to mature in 1957 and the trust was to terminate that same year. Such fact clearly connects the insurance policies with the income from the trust fund. The continuation of premium payments is a necessary corollary to our giving effect to the three documents.

After a careful consideration of the entire record and the many informative briefs in this case, we have reached the conclusion that the decision of the chancellor correctly adjudicated all issues presented.

Judgment affirmed.