**Krimm WELSCH, Appellant,**

v.

**SOUTH TEXAS CONSTRUCTION COMPANY, Appellee.**

**No. 4177.**

Court of Civil Appeals of Texas.

Waco.

Nov. 21, 1963.

Rehearing Denied Dec. 12, 1963.

**124**

Thornton & Hosey, Galveston, Ted Dunnam, Davant & Fricke, Port Lavaca, for appellant.

Guittard & Henderson, Victoria, Howard Hartzog, Port Lavaca, for appellee.

TIREY, Justice.

Plaintiff grounded his cause of action for damages on the alleged negligence of the South Texas Construction Company because of its failure to construct and maintain certain warning, detour and safety signs on Highway #35 which was under construction near Point Comfort, Texas. The Court overruled South Texas Construction Company's motion for instructed verdict and submitted the cause to the jury on 26 issues. Some of the issues were answered favorably to plaintiff, and the jury found that plaintiff had sustained damages for his own injuries in the sum of $21,700.00, and that he sustained further damages for the death of his wife in the sum of $13,000.00. However, the jury found that in answer to issue 13 that plaintiff failed to keep such a lookout at the time of and on the occasion in question as would have been kept by a person of ordinary prudence in the exercise of ordinary care in the same or similar circumstances, and further found in answer to issue 14 that such failure was a proximate cause of the collision. The jury further found in answer to issue 19, that just prior to the collision Welsch changed the course of his automobile without first seeing that there was sufficient space for such movement to be made in safety and, in issue 20, found that such failure was negligence, and further found that such negligence was the proximate cause of the collision. The court granted South Texas Construction Company's motion for judgment and plaintiff seasonably filed his motion for new trial, which was overruled, and he gave notice of appeal to the San Antonio Court and the case is here on transfer.

The judgment is assailed on two points. They are substantially to the effect that the Court erred: (1) In failing to hold that there was an entire lack of evidence to show that plaintiff was contributorily negligent in his failure to keep a proper lookout and, in the alternative, that such holding of negligence and proximate cause is against the great weight and preponderance of the evi-

dence; (2) That the trial court erred in failing to grant a new trial because of jury misconduct.

Plaintiff's counsel, in oral argument, stated substantially that he was of the view that point 2 relating to misconduct was controlling. He devoted most of his oral argument in discussing this point, and we shall do likewise. (Perhaps we should state that appellant did not in any sense waive his point 1 and devoted the last part of his argument to it).

In order to understand appellant's contention about jury misconduct, it is necessary to make a statement concerning the accident and the litigation that resulted therefrom. Krimm Welsch, an employee of Reynolds Aluminum Company at Corpus Christi, got off from work at 4:30 P.M., on October 6, 1961, and left shortly thereafter for the John Sealy Hospital at Galveston for the purpose of bringing his wife home. He went to Galveston via Port Lavaca on Highway #35, and arrived at the hospital about 9 P.M., and "picked-up" his wife, purchased gas, and began his return trip to Corpus Christi on the same route he had previously traveled and arrived at the detour area at Point Comfort about 11:30 P. M. In the early evening a football game had been in progress between ElCampo High and Port Lavaca High Schools, and attending this game were Robert E. Rasmussen and wife, and Emil Olsen and wife of ElCampo, who had driven over to Port Lavaca in the Rasmussen car. The Rasmussens and their guests were on their way back to ElCampo after the game. As the Welsch car came almost off the detour at Point Comfort the Rasmussen car and the Welsch car were involved in a collision because the Welsch car missed the detour turn and a head-on collision occurred. As a result of this collision Mr. and Mrs. Olsen and Mrs. Welsch were killed and Mr. and Mrs. Rasmussen and Mr. Welsch each were injured. In October 1961, Rasmussen and his wife filed their original petition for damages in the District Court of Calhoun County, seeking recovery on account of

their injuries, as well as next friends of the two minor Olsen children for the death of their parents against South Texas Construction Company and Welsch, as co-defendants. Welsch filed his original answer and later filed an amended answer and cross-action against South Texas Construction Company in his own behalf and others, not pertinent here. This action on behalf of Rasmussens and the action on behalf of the other co-plaintiffs pass out of the case by virtue of settlement and compromise and the action as to them needs no further explanation.

Welsch's action against his co-defendant, South Texas Construction Company, went to trial on Welsch's second amended original answer and cross-action, and pertinent to this discussion he alleged substantially that on October 6, 1961, while he was accompanied by his wife and was driving on highway #35, that he approached Point Comfort and entered the section of the highway that was under construction; that as he entered such area he reduced his speed to approximately 35 miles per hour and drove cautiously; that he was driving his car with the headlights on "dim" and that there was and had been unusually heavy traffic on the highway. At various intervals within the construction area and on his right-hand side of the highway, the shoulders had been dug away and were not clearly defined because of inadequate lighting and poor warning signs; that as they proceeded some distance from the railroad tracks he could see a poorly lighted barrier in front of him which extended from one side of the highway to the other; that the broken white center stripe continued along the highway in front of them into the barrier, and as he drew closer to the barrier he was finally able to discern two rusty, dim and obscure signs on the barrier detour, and an arrow pointing to his right; that as soon as he was able to determine the instructions given by the signs, he immediately began to make his right-hand turn into the detour road when, suddenly, he was confronted with the lights of the Rasmussen

car approaching him on a head-on collision course; that he slammed on his brakes, but in spite thereof the head-on collision occurred, and as a direct and proximate result of the collision his wife was killed, and he suffered severe and lasting injuries; that at the point of the collision his co-defendant negligently failed to provide sufficient, adequate and proper warnings to re-route the travelers of the highway into and upon the hazardous, dangerous and uncertain detour, and as a direct result the head-on collision occurred. He alleged specifically 16 different acts of negligence on the part of his co-defendant.

The South Texas Construction Company went to trial on its third amended original answer in which it entered a general denial, and further specially plead that Welsch was guilty of contributory negligence in 15 different particulars. Pertinent to this discussion the allegations are to the effect that Welsch failed to keep such a lookout at the time and on the occasion in question as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances, and that such failure was a proximate cause of the collision and the injuries he complained of; and further, plead that just prior to the collision Welsch changed the course of his automobile without first seeing that there was sufficient space for such movement to be made in safety, and that such failure was negligence and a proximate cause of the collision and resulting injuries complained of. We have previously stated that the jury answered the foregoing allegations favorable to the South Texas Construction Company and that it was on such answers that the Court entered judgment in behalf of the Construction Company and a take-nothing judgment against Welsch.

Welsch in his motion for new trial and with reference to misconduct of the jury, specifically alleged:

"(d) That the jury, in its deliberations, had not answered any of the con-

tributory negligence issues or proximate cause issues relating to plaintiff, Krimm Welsch, during the first day of the deliberations, but, in fact, had had a great deal of argument concerning the same; that on the morning of the 26th day of January 1963, one of the jurors made the following statement, or words to that effect:

'Well, if Krimm Welsch was not negligent and if his negligence was not the proximate cause of the collision, why did he pay so much money to the Rasmussens and the Olsens? It would seem to me that he was bound to be negligent because he did pay so much money in settlement to the Rasmussens and the Olsens.' "

As we understand appellant's brief it is his contention that the foregoing statement made by one of the jurors influenced some of the other jurors who believed Welsch was not negligent in any respect to cast their vote that Welsch was negligent, and that his negligence was a proximate cause of the collision.

On motion for new trial appellant tendered Mrs. Freeze, a juror, and W. S. Duke, a juror, to substantiate his allegations of jury misconduct, and the appellee called jurors, Lawrence Webb, and James L. Patterson, to sustain its contention that there was no jury misconduct, and the testimony of these four witnesses is before us in question and answer form. It appears from the record that this cause went to trial on Monday, January 21, and the Court's charge was read to the jury on Friday, January 25, and the jury began its deliberations on that day. Mrs. Freeze testified to the effect that she heard the evidence, and that the jury had some difficulty in arriving at its decision, and that on Friday while considering the verdict she was of the view that Welsch was not negligent, and that his negligence was not a proximate cause of the accident. She further testified to the effect that thereafter during the jury de-

liberations that the juror, Lawrence Webb, sometime Saturday before the verdict was returned, said:

"Well, he said that if Welsch wasn't at fault or wrong, well, why did the insurance settle with Rasmussen,"

and that on that statement she changed her vote and voted that Welsch was negligent. She further testified to the effect that juror Webb was sitting at the head of the table and to her right when he made the statement, and further testified:

"Q. In the jury room didn't somebody speak up after Webb had made that statement and said you were not supposed to consider that?

"A. I did. I made one of them. I was one of them that told them not to say it; that it shouldn't have been said.

"Q. And you told the other jurors you weren't supposed to consider that?

"A. No, I just told Mr. Webb that; that it was not in evidence."

The juror Duke, testified to the effect that while the jury was considering this cause on Friday, that he voted that Welsch was not negligent, but on Saturday following after the statement by Webb, he said:

"Well, I believe it was Saturday morning. The statement that he made was approximately this: I couldn't tell you word for word, but that if Krimm Welsch hadn't been negligent or had been the proximate cause of the collision, then how come his Insurance Company had paid off Rasmussen and the other party, Olsen, I believe is what he said."

The juror, Lawrence Webb, testified to the effect that he made no such statement attributed to him by Mrs. Freeze or the juror Duke, and that the first time that he learned that Welsch had made a settlement or someone had made a settlement for him, was on Friday before he was called to testify on this motion (which was some weeks after the trial) and that this information came to him over the telephone from Judge Hartzog. He testified specifically that he did not make any such statement or statements in the jury room to the effect that Welsch or somebody for him had made a settlement and that he did not hear anybody make a statement in the jury room that Welsch or somebody for him had made a settlement. James L. Patterson, a juror, testified to the effect that he was foreman of the jury in this cause and that during the deliberations of the jury he did not hear Webb make a statement to the effect that Welsch must have been negligent or his insurance company would not have made a settlement with the Rasmussens. He said: "I do not remember Mr. Webb saying anything in that order."

"Q. Well, do you remember any statement by Mr. Webb about a settlement by Welsch himself?

"A. No, sir, I do not remember any statement. I am positive that there was lots said in there. I don't remember any such statement made by Mr. Webb. I am positive that it never became an issue or discussion of the panel."

■■ We have carefully considered the testimony of the foregoing four jurors who testified in this behalf. Their testimony covers some 49 pages, and after a careful consideration we are of the view that it presents solely a question of conflict on the facts as to what happened during the jury's deliberations. Under the rules governing our practice it was the duty of the trial court to decide this conflict. When the parties rested the trial court overruled appellant's motion for new trial. In so doing he impliedly found that there was no misconduct. Surely he was in a better position than we are to pass upon this factual situation; however, we are in complete accord with the trial court's view. For a statement of the rule see Younger Brothers, Inc. v.

Myers, 159 Tex. 585, 324 S.W.2d 546, pt. 6. See also Texas Digest, Appeal and Error, ⚮1015(5). Accordingly, appellant's point 2 is overruled.

■ Going back to appellant's point 1, we have read very carefully the testimony in this cause and we are of the view that the evidence is ample to support the jury verdict that Welsch failed to keep a proper lookout on the occasion in question, and that such failure was a proximate cause of the collision. And we are of the further view that the evidence is ample to sustain the jury findings that Welsch changed the course of his automobile just prior to the collision without first seeing that there was sufficient space for such movement to be made in safety, and that such movement was negligence and a proximate cause of the collision. That leads us to say that it is our view that the jury's findings on contributory negligence are not without probative value, and we are of the further view that the answers of the jury as to contributory negligence are not so against the great weight and preponderance of the evidence as to be manifestly unjust under the doctrine announced In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. We are of the further view that a detailed discussion of the evidence relating to contributory negligence of Welsch would be of no precedential value and would unduly extend this opinion. See Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. Accordingly, appellant's point 1 is overruled.

The judgment of the trial court is affirmed.